# SUPREME JUDICIAL COURT

### AT THE

## MARCH SESSION 1872, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. HORACE GRAY, JR.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT,      } JUSTICES.
Hon. SETH AMES,
Hon. MARCUS MORTON,

---

## COMMONWEALTH *vs.* FREDERICK LOCKWOOD.

By the Constitution of the Commonwealth, the governor with the advice of the council may grant a pardon of an offence after verdict of guilty and before sentence and while exceptions allowed by the judge who presided at the trial are pending in this court for argument; and the convict, upon waiving his exceptions and pleading the pardon, is entitled to be discharged.

INDICTMENT for cheating by false pretences; returned at March term 1871 of the superior court in Suffolk for criminal business. At May term of that court a trial was had, a verdict of guilty returned, and exceptions taken by the defendant to the rulings and decisions of the presiding judge were allowed.

The exceptions were duly entered in this court, and while they were pending here, and before any argument or decision of the questions arising thereon, the defendant on December 13,

1871, came into the superior court, and there pleaded a pardon, granted by the governor with the advice of the council on December 8, of the offence charged in the indictment. The district attorney, in behalf of the Commonwealth, replied that the pardon was granted " while the exceptions were pending and undecided as aforesaid, and before any judgment on said verdict was or had been rendered by said superior criminal court or any conviction had on said indictment, and was and is null and void." The defendant demurred to the replication; and *Lord*, J., reported the case for the determination of this court as follows:

" By consent of the parties, I report for the determination of the supreme judicial court, whether said pardon can be pleaded in bar of sentence upon said indictment; and, whether it can or cannot be pleaded, what is the legal effect of the pleading in the case. It was agreed between the parties, that the exceptions to the rulings and decisions of the superior court were pending at the time the pardon was issued; and that said exceptions were subsequently waived, and the pardon pleaded, as appears by the record. The Commonwealth's attorney contended that, under the Constitution of the Commonwealth, the governor cannot pardon till conviction is established by the judgment of the court upon a verdict of guilty; that at all events, even if the executive may interpose his pardon before sentence, it can only be when nothing of judicial proceeding remains except sentence, when the right of the government to move for sentence is judicially determined; and that under no circumstances whatever can a pardon be issued while there remains undecided a judicial question, upon which conviction and sentence depend. On the part of the defendant, it was contended that the power and right of the governor to pardon is absolute upon the rendition of a verdict of guilty by the jury, and, whether so or otherwise, the defendant is entitled upon the pleadings to be discharged."

*G. A. Somerby & W. S. Gardner*, (*T. H. Sweetser* with them,) for the defendant.

*J. W. May*, District Attorney, for the Commonwealth.

Gray, J. This case presents an interesting question of the extent of the power conferred by that provision of the Constitu-

tion of the Commonwealth, which declares that "the power of pardoning offences, except such as persons may be convicted of before the senate by an impeachment of the house, shall be in the governor, by and with the advice of council; but no charter of pardon, granted by the governor, with advice of the council, before conviction, shall avail the party pleading the same, notwithstanding any general or particular expressions contained therein, descriptive of the offence or offences intended to be pardoned." Const. Mass. *c.* 2, § 1, art. 8.

The nature of this question, involving a definition of the limits of the constitutional authority of the executive department of the government, and the doubts which some of us at first entertained in relation to it, justify, if they do not require, a full statement of the reasons and precedents for the conclusion at which upon mature consideration we have unanimously arrived.

The ordinary legal meaning of "conviction," when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while "judgment" or "sentence" is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained. The authorities upon this point are so numerous, that it will be sufficient to cite a few of those which show that such was the legal understanding and use of these words at the time of the adoption of our Constitution.

Upon a question of the meaning of legal language as used at that time, there is no higher authority than Blackstone's Commentaries, which were published in 1765, and of which Edmund Burke, in his Speech on Conciliation with the Colonies, in 1775, said that he had heard that nearly as many copies had been sold in America as in England.

Blackstone uniformly speaks of the verdict of a jury upon a plea of not guilty as constituting the "conviction," even while the case is still open to a motion for a new trial or in arrest of judgment. After discussing the granting of a new trial when the accused has been found guilty by the jury, and the conclusive

effect of an acquittal, he adds : " But if the jury find him guilty, he is then said to be *convicted* of the crime whereof he stands indicted. Which conviction may accrue two ways; either by his confessing the offence and pleading guilty ; or by his being found so by the verdict of his country." 4 Bl. Com. 362. " After trial and conviction, the judgment of the court regularly follows, unless suspended or arrested by some intervening circumstance of which the principal is the benefit of clergy." Ib. 365. " We are now to consider the next stage of criminal prosecution, after trial and conviction are past, in such crimes and misdemeanors as are either too high or too low to be included within the benefit of clergy ; which is that of *judgment.*" " Whenever he appears in person, upon either a capital or inferior conviction, he 'may at this period, as well as at his arraignment, offer any exception to the indictment, in arrest or stay of judgment." Ib. 375. After describing the effect of " sentence of death, the most terrible and highest judgment in the laws of England," as attainting the criminal, and incapacitating him to be a witness, or to perform the functions of another man, he observes : " This is after *judgment ;* for there is great difference between a man *convicted* and *attainted ;* though they are frequently through inaccuracy confounded together. After conviction only, a man is liable to none of these disabilities ; for there is still in contemplation of law a possibility of his innocence. Something may be offered in arrest of judgment ; the indictment may be erroneous, which will render his guilt uncertain, and thereupon the present conviction may be quashed ; he may obtain a pardon or be allowed the benefit of clergy." Ib. 380, 381. " When judgment, pronounced upon conviction, is falsified or reversed, all former proceedings are absolutely set aside." Ib. 393. " General words have also a very imperfect effect in pardons. A pardon of all felonies will not pardon a conviction or attainder of felony, but the conviction or attainder must be particularly mentioned." Ib. 400. " A pardon may either be pleaded upon arraignment, or in arrest of judgment, or in bar of execution." Ib. 402. The terms of our Constitution clearly indicate that its framers had in mind these rules of the common law.

The word " conviction " was used in the same sense in many public acts of the government of this state, after it had thrown off the authority of the crown, and before the adoption of the Constitution of the Commonwealth. By St. 1776, *c.* 32, § 18, it was provided that " no miswriting, misspelling, false or improper English after conviction " upon an indictment for treason should " be any cause to stay or arrest judgment thereupon." By St. 1776, *c.* 44, § 1, any person offending against the act of 1775, *c.* 9, to prevent the forgery of bills of public credit, " and being thereof convicted as in said act provided, shall be adjudged guilty of felony and suffer the pains of death." By St. 1776, *c.* 48, § 3, any person transported out of the state as a public enemy, and returning during the war without license of the general court, should, " on conviction thereof before the superior court of judicature," " be adjudged guilty of felony, without benefit of clergy." And by the St. of January 25, 1779, *c.* 3, any inhabitant of this state, committing treason without the limits thereof, might be tried therefor in the county whereof he was an inhabitant, and, " if thereof convicted in the same county, be adjudged and punished in the same manner as if the said offence had been therein committed." Mass. State Laws, 1775–1780, pp. 110, 127, 136, 211. The death warrants of the same period, issued by the council exercising the executive power, preserve the same distinction between conviction by the jury and judgment of the court. For example, the warrant for the execution of Bathsheba Spooner and others for the murder of her husband in Worcester in 1778 recites that the defendants " were by verdict of our said county of Worcester convict, and thereupon " " were by our justices of our said court adjudged to suffer the pains of death." 2 Chandler's Criminal Trials, 378.

The first crimes act of the United States begins with these words : " If any person or persons, owing allegiance to the United States of America, shall levy war against them, or shall adhere to their enemies, giving them aid and comfort within the United States or elsewhere, and shall be thereof convicted, on confession in open court, or on the testimony of two witnesses to the same overt act of the treason whereof he or they shall stand indicted,

such person or persons shall be adjudged guilty of treason against the United States, and shall suffer death." U. S. St. 1790, *c.* 35, § 1. Section 31 of the same act declares that " the benefit of clergy shall not be used or allowed upon conviction of any crime for which, by any statute of the United States, the punishment is or shall be declared to be death." And our own St. of 1784, *c.* 56, § 2, provided that " if any person shall be convicted of any crime wherein by law the plea of benefit of clergy was heretofore allowed, and for which, without such benefit of clergy, he must have been adjudged to suffer the pains of death," he should be otherwise punished as therein prescribed. See also Sts. 1782, *c.* 9, § 1; *c.* 14, § 3; 1784, *c.* 9, § 4; *cc.* 46, 52, 58; *c.* 66, § 11; *c.* 68.

Mr. Dane, who was admitted to the bar before the adoption of the Constitution, and was peculiarly learned in the law of his time, says : " A man is convict by verdict, but not attainted before judgment." " Pardon is another special plea in bar." " By pleading a pardon in arrest of judgment, there is an advantage, as it stops the corruption of blood, by preventing the attainder." " Conviction is on confession or verdict." 6 Dane Ab. 534, 536. See also 7 Dane Ab. 339, 340.

In *Commonwealth* v. *Richards*, 17 Pick. 295, it was held that an appeal allowed by statute from the court of common pleas in a criminal case, to be claimed at " the court before which such conviction shall be had," must be claimed before the end of the term at which the verdict was returned ; and Chief Justice Shaw, in delivering the opinion of the court, said : " It has generally been considered, we believe, that, as the sentence is the final act in a criminal proceeding, it constitutes the judgment, and it is only from final judgments that appeals are to be taken. But though such is the general rule of law, we think it has been changed by this statute, and that the statute itself has made a distinction between a conviction and a judgment. In general, the legal meaning of ' conviction ' is, that legal proceeding of record, which ascertains the guilt of the party, and upon which the sentence or judgment is founded, as a verdict, a plea of guilty, an outlawry, and the like." See also *Commonwealth* v. *Andrews,* 2 Mass. 409, and 3 Mass. 126, 131, 133.

The use of words in our modern statutes is not the highest evidence of their meaning at the time of the adoption of the Constitution. But it may be observed that the Rev. Sts. *c.* 123, § 3, and the Gen. Sts. *c.* 158, § 5, provide that "no person indicted for an offence shall be convicted thereof, unless by confession of his guilt in open court, or by admitting the truth of the charge against him by his plea or demurrer, or by the verdict of a jury accepted and recorded by the court." It is by the defendant's own confession, plea or demurrer, or by the verdict, that he is here declared to be "convicted," without any action of the court in either alternative, except, in the latter, the mere formal acceptance and recording of the verdict, which implies no adjudication of the court upon the defendant's guilt. See also Rev. Sts. *c.* 137, § 11, and Gen. Sts. *c.* 172, § 16 ; Rev. Sts. *c.* 139, and Gen. Sts. *c.* 174, *passim.*

When indeed the word "conviction" is used to describe the effect of the guilt of the accused as judicially proved in one case, when pleaded or given in evidence in another, it is sometimes used in a more comprehensive sense, including the judgment of the court upon the verdict or confession of guilt ; as, for instance, in speaking of the plea of *autrefois convict,* or of the effect of guilt, judicially ascertained, as a disqualification of the convict. And it might be held to have the same meaning in the somewhat analogous case in which the Constitution provides that "no person shall ever be admitted to hold a seat in the legislature or any office of trust or importance under the government of this Commonwealth, who shall in the due course of law have been convicted of bribery or corruption in obtaining an election or appointment." Const. Mass. *c.* 6, art. 2. See *Case of Falmouth,* Mass. Election Cases (ed. 1853) 203.

But Blackstone says : "The plea of *autrefois convict,* or a former conviction for the same identical crime, though no judgment was ever given or perhaps will be, (being suspended by the benefit of clergy or other causes,) is a good plea in bar to an indictment." 4 Bl. Com. 336. And it is still an open question in this Commonwealth, whether a verdict of guilty, rendered upon a good indictment, and which has not been set aside, will or will

not, before judgment, support a plea of *autrefois convict*. 6 Dane Ab. 533. *Commonwealth* v. *Roby*, 12 Pick. 496, 510. *Commonwealth* v. *Lahy*, 8 Gray, 459, 461. *Commonwealth* v. *Harris*, Ib. 470, 473.

At the time of the adoption of the Constitution, the word " conviction " was ordinarily used to express the verdict only; even in treating of the disqualification of the convict as a witness. Lord Mansfield, for example, in 1774, where a witness was objected to as incompetent because he stood convicted of perjury, the record of which conviction was produced, said : "A conviction upon a charge of perjury is not sufficient, unless followed by a judgment ; I know of no instance in which a conviction alone has been an objection." *Lee* v. *Gansel*, Cowp. 1, 3. In the earlier cases in this Commonwealth, the word " conviction " was used in the same sense as applied to such a question, even before it had been settled whether a judgment was necessary to complete the disqualification of the witness. Upon the trial in this court in 1788 of an indictment against two for perjury, to which one pleaded guilty and was offered as a witness for the Commonwealth against the other, Mr. Justice (afterwards Chief Justice) Dana states, in his manuscript note of the case, " To whom it is objected that, standing convict of the *crimen falsi*, he is disqualified to be a witness. It is answered that conviction, though of the *crimen falsi*, is no disqualification, without it be followed by an infamous punishment ; or at least until after judgment." The witness was excluded by a divided court. *Commonwealth* v. *Manley & Willis*, Bristol, October term 1788. So in *Cushman* v. *Loker*, 2 Mass. 106, the court said, " It is now settled that nothing short of a conviction on an indictment for *crimen falsi*, and a judgment on the conviction," " is a sufficient objection to the competency of a witness." And in the latest case on that subject, in which it was held that a verdict, without judgment, was not such a " conviction " as could be proved under Gen. Sts. *c.* 131, § 13, in order to affect the credit of a witness, it was said : " In its most common use, it signifies the finding of the jury that the prisoner is guilty." *Commonwealth* v. *Gorham*, 99 Mass. 420.

It was argued by the learned attorney for the Commonwealth, that the words of the Constitution, that no pardon granted before conviction " shall avail the party pleading the same," imply that it cannot be taken advantage of after verdict in the first prosecution for the offence in question, because the time for pleading is then past. But " pleading," as here used, may well include any suitable form of bringing the pardon to the notice of the court, by plea, motion, or otherwise. Coke, Holt, Mansfield and Blackstone, all speak of " pleading " a pardon after the verdict and even after the judgment. 3 Inst. 235. *Rex* v. *Parsons*, 1 Freem. 507. *The King* v. *Beeton*, 1 W. Bl. 479. 4 Bl. Com. 337, 376, 402. In at least one instance before the superior court of judicature of the Province of Massachusetts Bay, a man who had been indicted for murder and found guilty by the jury, and his case continued from term to term, upon a motion for a new trial, until he had obtained a pardon from the king, was then, as the record states, " brought again into court, and, being set to the bar, upon his knees he pleads his majesty's most gracious pardon of the offence aforesaid, a certificate of which from the secretary of state's office, being produced, is allowed." *The King* v. *Richardson*, Rec. 1772, fol. 15. And, as we shall presently see, there are many similar records since the adoption of the Constitution.

It is not easy to ascertain the source of the constitutional restriction of the pardoning power. The acts of the English Parliament contained no like provision; and the histories of Massachusetts, and such imperfect notes of the debates in the convention which framed the Constitution of the Commonwealth as have come down to us, are silent upon the subject.

The English Bill of Rights of 1688 declared " that all grants and promises of fines and forfeitures of particular persons before conviction are illegal and void." St. 1 W. & M. sess. 2, c. 2, § 12. That article did not affect the power of the sovereign to remit fines and forfeitures and pardon offenders; but was aimed at the illegal practice of granting away fines and forfeitures before they had actually accrued; and an inquest or inquisition of office by the jury was a complete conviction within the contemplation of the Bill of Rights. 3 Bl. Com. 259. 4 Bl. Com. 301.

By the common law, a conviction of felony by verdict or confes-
sion vested in the king the goods and chattels of the felon, al
though his lands were not forfeited until attainder by judgment.
4 Bl. Com. 373*, 387.

The house of commons in 1679, and again in 1689, resolved
that a royal pardon could not be " pleaded in bar of an impeach-
ment. ' 4 Hatsell's Prec. 192, 193, 277. And in 1700 the act of
settlement of 12 & 13 W. III. c. 2, § 3, declared " that no par-
don under the great seal of England be pleadable to an impeach-
ment by the commons in parliament." " But," Blackstone says,
" after the impeachment has been solemnly heard and determined,
it is not understood that the king's royal grace is further re-
strained or abridged." 4 Bl. Com. 399. There is no doubt that
the king can pardon after sentence upon an impeachment. 7
Parl. Hist. 283. 4 Hatsell's Prec. 296 note. 2 Hallam's Const.
Hist. c. 12, (7th ed.) 414. And the question of his power to
pardon after a vote of guilty and before sentence does not appear
to have arisen in England. But in proceedings upon impeach-
ment before the house of lords since the St. of W. III. the plea
or vote of guilty was considered the " conviction," and the sen-
tence passed thereon the " judgment," as clearly appears in two
cases of impeachment for high treason in the reign of George I.,
in which Lord Chancellor Cowper presided as lord high steward.
In one of them, in 1715, the Earl of Derwentwater and five other
lords having confessed the charge, Lord Cowper said : " You have
severally pleaded guilty, and are thereby convicted. What say
you " (addressing each of them by name successively) " why
judgment should not pass upon you according to law ? " 15 How-
ell's State Trials, 761, 791. In the other, in 1716, the Earl of
Wintoun pleaded not guilty, upon the trial the lords unanimously
voted that he was guilty, and Lord Cowper announced to him
that they had found him guilty, and asked him if he had any-
thing to offer why judgment of death should not pass upon him
according to law. He then moved in arrest of judgment, and
after argument of counsel upon that motion the lords retired, and
on their return Lord Cowper, in passing sentence of death, ad
dressed him as follows: " George, Earl of Wintoun, I have al

ready acquainted you that your peers have found you guilty, that is, in the terms of the law, convicted you of the high treason whereof you stand impeached. After your lordship has moved in arrest of judgment, and the lords have disallowed that motion, their next step is to proceed to judgment." Ib. 805, 874, 893. In 1747, Lord Hardwicke, presiding at the trial of Lord Lovat on a like impeachment, used similar words. 18 Ib. 529, 827.

The Federal Constitution, like that of this Commonwealth, wholly excepts cases of impeachment out of the executive power of pardon. Const. U. S. art 2, § 2. 3 Madison's Debates, 1433. But both constitutions, and the highest authorities upon the subject, recognize the like distinction between " conviction " and " judgment " in cases of impeachment, as in cases tried before a court and jury. The Constitution of Massachusetts provides that the senate shall hear and determine all impeachments; that " their judgment " shall not extend further than to removal from office and disqualification to hold or enjoy any place of honor, trust or profit under this Commonwealth; " but the party so convicted shall be nevertheless liable to indictment, trial, judgment and punishment according to the laws of the land." Const. Mass. c. 1, § 2, art. 8. The Constitution of the United States provides that all impeachments shall be tried by the senate; that "no person shall be convicted without the concurrence of two thirds of the members present;" and that " judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under the United States; but the party convicted shall nevertheless be liable and subject to indictment, trial, judgment and punishment, according to law." Const. U. S. art. 1, § 3. Mr. Justice Story, in his Commentaries on the Constitution, says: " In England, the judgment upon impeachments is not confined to mere removal from office; but extends to the whole punishment attached by law to the offence. The house of lords, therefore, upon a conviction, may, by its sentence, inflict capital punishment; or perpetual banishment; or forfeiture of goods and lands; or fine and ransom; or imprisonment; as well as removal from office, and incapacity to hold office; according to the nature and aggra-

vation of the offence." And again, in speaking of the more com-
plete restriction of the president's power of pardon, in cases of im-
peachment, than of the king's, he says : " As the judgment upon
a conviction extends no farther than to a removal from office, and
disqualification to hold office, there is not the same reason for its
exercise after the conviction, as there is in England." Story on
Const. U. S. §§ 782, 1496. In the trial of President Johnson,
the rules of the court of impeachment provided that " if the
impeachment shall not, by any of the articles presented, be sus-
tained by the vote of two thirds of the members present, a judg-
ment of acquittal shall be entered ; but if the person accused
shall be convicted upon any of said articles by the votes of two
thirds of the members present, the senate shall proceed to pro-
nounce judgment." And accordingly, after the vote had · been
taken, and declared by the chief justice, showing that two thirds
of the members present had not found the president guilty, and
that he was therefore acquitted, the chief justice said, " That is
not the judgment of the senate ; " and, after debate, a judgment
of acquittal was unanimously ordered to be entered. 1 Johnson's
Trial, 14. 2 Ib. 497, 498.

But the effect of the provision of the Constitution of Massachu-
setts, as applicable to ordinary criminal cases, is not now to be
determined for the first time by the meaning of its words, or by
any analogy to be drawn from cases of impeachment in England
or America. It is practically settled by the action of the highest
executive and judicial authorities of the Commonwealth, reaching
back to the time of the adoption of the Constitution, and proved
by the records of the governor and council and of this court.

At November term 1780 in Essex, Sargent Daniels was tried
and found guilty of manslaughter, and, upon motion of his coun-
sel, the court ordered that sentence be respited, and that he be
bailed, and the case was continued until November term 1781
" for judgment ; and now the said Sargent Daniels, being again
brought into court and set at the bar, is asked by the court if he
has anything to say why sentence of death should not be given
against him, pleads the gracious pardon of his excellency John
Hancock, Esquire, with the advice of council, of the offence afore-

said, under the public seal of the Commonwealth of Massachu-
setts, bearing test the fifth day of November A. D. 1781, which
being produced and read in court, is allowed. It is therefore
considered by the court, that the said Sargent Daniels go without
day." Rec. 1781, fol. 128. The charter of pardon in that case,
a copy of which has been laid before us, recites that the defend-
ant, " an infant," had been " convicted of manslaughter : Where-
upon the said court suspended the sentence against the said
Sargent by reason of his being of very tender years."

At April term 1787 in Hampshire, Timothy Hinds was in-
dicted for treason against the Commonwealth, and pleaded guilty,
and the indictment was continued until September term 1787 for
sentence. " And now the said Timothy is set to the bar, and it
being demanded of him what he hath to say wherefore sentence
of death should not be passed upon him for the crime of treason
of which he stands convicted, says that since the time of his con-
viction of the crime alleged in said indictment, to wit, on the
eleventh day of May in the year of our Lord seventeen hundred
and eighty-seven, his excellency James Bowdoin, Esquire, then
governor of the Commonwealth, by and with the advice of the
council of said Commonwealth, granted to him, the said Timothy,
under the seal of the Commonwealth, a full, free and complete
pardon of the crimes in said indictment alleged, and of all pains
and penalties therefor, which same charter of pardon the said
Timothy here produces and exhibits to the court, and prays that
the same may be allowed, which is in the words following: " [set-
ting it out in full] " all which being seen and fully understood,
it seems to the court here that the plea of the said Timothy as
above in pleading alleged, and the pardon by him now produced,
are good and sufficient in law. It is therefore considered by the
court that the said Timothy go without day." Rec. 1787, fol. 241.

The judges present when these cases were decided appear by
the records to have been Chief Justice Cushing and Justices
Sargent and David Sewall in both cases, together with Justice
Sullivan in the first case, and Justice Sumner in the second. All
these judges, as well as Governor Hancock and Governor Bow-
doin, had been members of the convention which framed the
Constitution of the Commonwealth.

A report of another case is preserved among the manuscripts of Chief Justice Dana. At November term 1803 in Suffolk, Deborah Stevens was indicted for the murder of her bastard child by drowning. At the trial, before Justices Strong, Sedgwick and Thacher, there was evidence that the child had been alive a short time before it was thrown into the water, and was there found dead the next day, with a bruise upon its head and a string tied about its neck. It was argued by the counsel for the prisoner, that the death of the child might have been caused either by the blow on the head, or by being strangled by the string about its neck, before being thrown into the water ; and so not by drowning. Justices Strong and Sedgwick (Thacher, J., dissenting) instructed the jury " that if they were convinced a murder had in fact been committed by the prisoner upon the child, and only doubted as to the means of the death, they might lawfully convict the prisoner, unless from the evidence they were satisfied that it was dead before it was thrown into the water by the prisoner." The defendant being found guilty by the jury, a motion was made in her behalf " for a suspension of judgment in order to obtain a request from the court to the supreme executive to issue a charter of pardon in her favor." The result of this motion is stated by the chief justice in these words : " The court, after argument by the attorney general and the counsel for the prisoner, suspended sentence against the prisoner, and recommended her to the governor as a subject of mercy. Three of the court, viz. Dana, Sewall and Thacher, were of this opinion on account of the direction in matter of law of Sedgwick and Strong to the jury, the two justices who sat on the trial together with Thacher — Strong and Sedgwick adhering to their direction as given to the jury."

At April term 1808 in Worcester, David Potter was indicted for larceny, and pleaded guilty, and the indictment was continued for sentence. At September term following, held by Chief Justice Parsons and Justices Samuel Sewall and Isaac Parker, (successively chief justices of this court,) the defendant, being set to the bar, pleaded ".that sentence on the conviction aforesaid ought not to be passed upon him," because, " after the conviction afore-

said," the governor, with the advice of the council, had granted to him a charter of pardon, which he produced and prayed might be allowed by the court. "All which being seen and understood by the court here, it is considered by the court that the said David Potter be discharged and go without day." Worcester Rec. 1808, fol. 540.

About the same time, John Waite, having been indicted for forgery in the county of Cumberland, now in Maine, but then part of this Commonwealth, and found guilty, moved the court, as the report states, " to set aside the verdict on the ground that he was improperly convicted." The grounds of the motion were, that the defendant had since obtained evidence of confessions of the principal witness against him, which showed him to have been incompetent; and that, if he was competent, the defendant now had evidence further to discredit him. Chief Justice Parsons, in delivering the opinion of the court upon this motion, said : " In the trial of offences, but a small part of the trial is intrusted to the judges. The offender's peers are to pass on him; and to set aside a verdict merely at our discretion, and not on grounds which the law considers as sufficient, would be an arbitrary interference in judicial proceedings, and a violation of the important rights of jurors." " If there are any equitable or humane causes for relief, they belong not to us, but to the executive. Sentence must be passed on the verdict." To which the reporter adds, in a note, " The sentence being respited, the defendant received a pardon from the governor and council, which, being produced at the next term of the court, was allowed, and the defendant discharged, *ut audivi.*" *Commonwealth* v. *Waite,* 5 Mass. 261. A certificate of that pardon, from the office of the secretary of the Commonwealth, was produced at the argument of the present case.

At April term 1807 in Middlesex, Joel Brown was tried before Sedgwick, J., and found guilty of larceny, and moved for a new trial for misdirection of the judge to the jury. The case was continued to November term 1809, when, after argument upon this motion, Sedgwick, J., said, " The conviction, I think, was right," and the other judges concurring, a new trial was refused.

*Commonwealth* v. *Brown*, 4 Mass. 580. Before any further judg-ment or sentence, the defendant obtained and pleaded a pardon from the executive, and was thereupon discharged by the court. Middlesex Rec. 1810, fol. 6.

The published reports afford other instances in which, after overruling motions for a new trial and in arrest of judgment, or exceptions taken by the defendant at the trial, the court has sus-pended final judgment and sentence to await the effect of an application of the defendant to the governor for a pardon. *Com-monwealth* v. *Ladd*, 15 Mass. 526. *Commonwealth* v. *Mash*, 7 Met. 472, 475.

Even when no judgment whatever has been rendered, and no action had by the court after the acceptance and recording of the verdict, no instance has been found in which a pardon granted after verdict has been disputed or disallowed. And our records show that in very many cases, upon the production of a pardon granted by the executive at that stage, the court has discharged the defendant. It will be sufficient to add one more case to those already cited.

At September term 1811 in Worcester, held by Parsons, C. J., Sedgwick, Sewall and Parker, JJ., Frederick Carpenter, who had been indicted for uttering as true a forged and counterfeit paper, and pleaded not guilty, and been found guilty by the jury, and afterwards, being set to the bar, pleaded " that no judgment ought to be rendered on the said verdict," because the governor and council had since granted him a pardon, " wherefore he prays that judgment on said verdict may be arrested, and he may be thereof discharged and permitted to go without day. Which being seen and fully understood by the court, it is thereupon ordered that the said Frederick Carpenter be discharged and go thereof without day." Worcester Rec. 1811, fol. 409.

In *Commonwealth* v. *Green*, 17 Mass. 515, in 1822, in which the power of the court to grant a new trial in a capital case on motion of the defendant after conviction by the jury was delib-erately settled for the first time in this Commonwealth, upon full argument and advisement, Chief Justice Parker, in delivering judgment, clearly affirmed the authority of the court, upon being

satisfied of an error in the rulings at the trial, to certify the fact to the executive and recommend a pardon, instead of granting a new trial; and declared that the latter course was the most proper, not from any doubt of the power of the executive to grant a pardon at that stage of the case, but because it was more consistent with public justice that the defendant should be tried again according to law than that he should be discharged for some irregularity perhaps not affecting the merits of the case, and more consistent with the rights of the defendant to have the judges correct an error committed by themselves or by others concerned in the trial, "instead of being obliged to rely upon the disposition of the court to recommend a pardon, or of the executive power to grant it." 17 Mass. 535, 536.

If the words of the constitutional provision could be deemed ambiguous, their interpretation must be held to be settled by the contemporaneous construction and the long course of practice in accordance therewith. *Stuart* v. *Laird,* 1 Cranch, 299, 309. *Edwards* v. *Darby,* 12 Wheat. 206, 210. *Commonwealth* v. *Parker,* 2 Pick. 549, 556.

It was argued for the Commonwealth that the defendant could not be said to be convicted at the time when this pardon was granted, because a bill of exceptions was then pending in this court to the rulings under which he had been found guilty, and that after pleading the pardon he might still prosecute his exceptions, and, if they should be sustained, have the verdict set aside. But it is within the election of the defendant whether he will avail himself of a pardon from the executive (be the pardon absolute or conditional); if he does not plead the pardon at the first opportunity, he waives all benefit of the pardon; if he does so plead it, he waives all other grounds of defence. Staunf. P. C. 150. J. Kel. 25. 4 Bl. Com. 402. *United States* v. *Wilson,* 7 Pet. 150. The pleading of the pardon in the superior court would therefore be *ipso facto* a waiver of his exceptions. A still more conclusive answer to this objection is, that at the time of the adoption of the Constitution, and for many years afterwards, no bill of exceptions was permitted by law. It was first given to the rulings of a justice of this court by St. 1804, *c.* 105, § 5:

and to the rulings of the court of common pleas, by St. 1820, c. 79, § 5. The providing by the legislature of a new form of presenting questions of law to the court does not make the verdict of a jury, so long as it stands, less than a "conviction," and cannot abridge the prerogative of the executive under the Constitution. *Ex parte Garland*, 4 Wallace, 333, 380.

The necessary conclusion is, that, having regard to the ordinary legal meaning of the words used in the Constitution at the time of its adoption, to the presumption which the judiciary is always bound to make in favor of the validity of the acts of those intrusted with the highest authority in another department of the government, to the rule of interpretation in favor of the liberty of the subject, and to the practical construction given to this clause by the supreme executive of the Commonwealth and by our predecessors in this court from the beginning, the pardon of the defendant is valid, and he must be                    *Discharged.*