AUGUSTUS LYTLE *vs.* WASHINGTON TERRITORY.

MOTION to strike out assignment of errors.

The manner of transferring cases to our Supreme court is entirely statutory. In the suing out of a writ of error, no assignment of errors can be made, except in the precipe.

Neither in a civil nor criminal case does a writ of error, in fact, issue but upon taking the proceedings required by statute—which are pointed out in the opinion—the writ of error is *deemed* to have issued.

OPINION in case. It is not necessary in a case of murder, that the records in the trial-court should show a copy of the indictment was served upon the prisoner:

The contents of the record in a case of felony at the common law, as well as of statutory law as administered in this country, enunciated.

The sentence in a criminal case constitutes the final judgment.

Error to the Third Judicial District holding terms at Steilacoom.

*B. F. Dennison* and *Allen Bros.* for plaintiff in error.

*George N. McConnaha,* Prosecuting Attorney, for defendant in error.

MOTION to strike out additional assignment of errors.

Opinion by JACOBS, Chief Justice.

In this cause a precipe was duly filed in the District court, within the three months next succeeding the term of the court in which the final judgment was rendered, and two errors were duly assigned therein, and due notice was served on the District Attorney. Upon that precipe and notice, the cause came into this court and is here for final review.

On the first day of the present term, the counsel for plaintiff in error, without leave—if leave was necessary—made an assignment on the record, not only of the two errors assigned in the precipe, but also three other specific assignments of error, as well as one general assignment of all other manifest errors existing in the record.

A motion is made to strike from the files of this court, this last mentioned assignment of errors. The question is, ought this motion to be granted—and we are unanimously of the opinion that it ought to be.

If this was not a case of the deepest importance to this plaintiff in error, we would feel ourselves justified in closing this opinion, by the above announcement of what we deem the law to be, but as learned counsel for plaintiff in error have earnestly pressed upon our attention their alleged right to make this new assignment of errors, we deem it not only justice to them, but to ourselves, that some of the reasons for this conclusion should be stated.

1.  Our construction of the statute leads to no denial of justice, by the enforcement of a technical rule of law. The

plaintiff in error should have a reasonable time from the date of the final judgment against him in the court below, in which to examine the record and assign his errors. That time is fixed by the statute, and is two years. We hold that this time is sufficiently liberal. If errors cannot be discovered and assigned within this time, it is presumable they do not exist. As some time must be fixed and always is fixed, after the lapse of which errors cannot be assigned, all the purposes of justice are promoted, if that time is sufficiently liberal for the purpose. We assume further as a manifest proposition, that the precipe is just as good a place for all the purposes of justice, for the assignment of errors as the files of this court. There is no magic in the retention of the old common law privilege of assigning errors on the first day of the term. On the contrary, it is an obstruction of justice by promoting delay, or the hasty and unprepared discussion of the points involved. If the defendant in error cannot know upon what errors the plaintiff in error will rely, until the first day of the term, how is he to prepare to meet them at that term in an intelligent manner. He must either meet them then, or delay is the necessary consequence. Now the code idea is, an open showing on both sides, so that there may be no delay—time for preparation and an intelligent trial. All of this, we hold to be accomplished by the construction given by us to the statute, and by our rules of court.

2. The ninth section of the organic act provides that "writs of error, bills of exceptions, and appeals shall be allowed in all cases from the final decisions of the District courts to the Supreme court, under such regulations as may be prescribed by law." Code 1863, page 34.

This undoubtedly means laws enacted by the Territorial Legislature. The mode or manner, including time and other essential circumstances, of taking a case from the District court to the Supreme court, by writ of error, is entirely statutory. Where is there any statute that allows or directs the assignment of errors on the first day of the term, or in any other place but the precipe? It is alleged that it can be found in section 325 of the criminal code of 1873. That provides it is true

that the laws and usages of this territory relative to pleading and practice heretofore in force, in criminal cases, and not inconsistent herewith, etc., are continued in force.   An inspection of the records of this court shows that there has been no assignment of errors in criminal cases, on the first day of the term, and on the records of this court for the past ten years; prior to that time there were such assignments—hence whatever might have been the legal foundation of such a practice, it entirely fell into disuse, and at the time of the enactment of the code of 1873, there was no such practice and such a practice therefore, could not have been within the intention of the Legislature.   The great idea of the code of 1873 was the assimilation of the form and mode of proceeding, not only in law and equity but also in criminal and civil law.   Diversity was destroyed wherever one common, uniform mode of proceeding would subserve the purposes of justice.   The code must be read and interpreted with this idea always in mind.   In accordance with this idea, full directions are given in regard to the mode of suing out a writ of error, and the mode and time of assigning errors, in the code of civil procedure and constant reference made to it in the code of criminal procedure.   Writs of error shall be sued out and served in the same manner as notice in a civil action.   Code, Section 298, page 247.

Now, how is this notice obtained in civil action?   A precipe is filed with the clerk of the District court, where the final judgment is, which precipe must contain a particular description of the judgment, order or decision, and a particular description of the errors assigned, which precipe directs the clerk to issue a notice to the opposite party, and which notice is the substitute for the writ of error.   Code, page 20, Section 432.

Now the above is the manner of suing out and serving notice in a civil action, and the statute says it shall be the same in a criminal action.   No writ of error is issued in either, but it is deemed to be issued in both.   Now the notice referred to in section 298 must, in the very nature of things, refer to and mean the notice spoken of in connection with the precipe, or it means nothing.   There is no notice sued out and served in a civil action but this.

But the learned counsel for plaintiff in error contend that an actual writ of error is sued out in a criminal case. If this view is correct, he is not legally here and has no right to be assigning errors anywhere. But such a view is not only opposed to a reasonable construction of the criminal statute, upon this subject, but to the uniform practice under that statute. The statute is not a new one; it has existed since A. D., 1863, at least. No writ of error has actually issued in a criminal case, or at least, the learned counsel has shown none. Then if no writ of error actually issues, but a notice in lieu thereof, and if such notice can only be obtained by the filing of a precipe, the law tells us what that precipe must contain, a particular description of the judgment and the errors assigned therein, and these are the errors so assigned, which are to be heard and examined by the Supreme court.

Again, Section 298 provides that the writ of error in a criminal action shall be served and returned, as in civil actions. Now how is a writ of errors served and returned in civil actions? Obviously by serving and returning a notice in the manner prescribed by the civil code.

Motion allowed.

OPINION on merits by JACOBS, Chief Justice.

This cause was tried at the January term of the Steilacoom court, held for the county of Pierce, in the Third Judicial District. The plaintiff in error was convicted of murder in the first degree and sentenced to be hung, within the time prescribed by law, for the execution of such sentence. He brings the case here for review and assigns two errors in his precipe. They are :

"1. That the record of the District court does not show that a copy of the indictment was served upon the defendant.

"2. That no judgment was pronounced by (District) court adjudging the defendant guilty of the crime of murder in the first degree, or any crime, and that he suffer death."

We will consider these in their order. But before we proceed to their particular consideration, we must consider and settle a preliminary question.

The learned counsel for plaintiff in error assume and make that assumption the basis of their arguments, that the question is, what are the substantial rights of a defendant accused and put upon his trial for murder. But that, manifestly, is not the question. The question is what should the record contain in order to show that the proceedings were regular and valid. Nor are the two propositions the exact measure, or equivalent, of each other. A defendant, accused of murder, has many statutory and common law rights, the enjoyment of which need not, and never are, evidenced by the record or journal entries. He has the right to have the names of the witnesses examined before the grand jury endorsed upon the indictment—he has the right to be confronted by the witnesses opposed to him—to have them sworn—to cross-examine them, and to have compulsory process to secure the attendance of his own witnesses, and many other like substantial rights, the enjoyment of none of which is evidenced by the record. And yet these rights are so substantial, and of such vital importance, that the denial of either one of them would vitiate the whole proceeding.

These observations show conclusively that the question is not what are the substantial rights of the defendant. A bill of exceptions has its office, and operation, under our statute, as fully as at common law, or under the civil code. Such is the express provision of section 271 of the criminal code. Its exact language is: "Exceptions may be taken by the defendant, as in civil cases, on any matter of law by which his substantial rights are prejudiced."

It is not necessary, for the safety or protection of all the rights of the defendant, that everything should appear in the journal entries. A bill of exceptions is just as effectual as journal entries, to protect his rights.

The question still recurs, what should the journal entries contain? We have no statutory enumeration of its essential particulars. We have a statutory enumeration of what the final record should contain (section 292, page 245, criminal code); among these are the "journal entries, and bills of exceptions." In the absence, then, of a statutory enumeration of

essential particulars, we must go to the common law. Chitty sums up the contents of a record in a case of felony as follows:

It "states the session of oyer and terminer; the commission of the judges; the presentment, by the oath, of the grand jurymen, by name; the indictment; the award of the capias, or process to bring in the offender; the delivery of the indictment into court; the arraignment; the plea; the issue; the award of jury process; the verdict; the asking of the prisoner why sentence should not be passed on him; and the judgment of death, passed by the judges."

Much of the above is not necessary in the common law, as administered in this country. The record, with us, never sets out the commission of the judge, who holds the court; and so of some other things in the above enumeration. A better enumeration is that given by the Supreme court of Illinois. After stating the caption, the record states "the indictment, properly indorsed as found by the grand jury; the arraignment of the accused; his plea; the empanelling of the traverse jury; their verdict, and the judgment of the court." 1 Bish. Crim. Proced., 931, 932; 2 Gilman, 540, *McKenny vs. People*; 3 Gilman, 644, *Pate vs. People.*

There probably ought to be added to the above enumeration the presence of the prisoner during the whole course of the trial in all cases of felony. This ought to appear by express averment or at least by necessary intendment from the whole record.

It is true that our statute provides that a copy of the indictment, in a capital case, shall be served on the defendant by the sheriff or his deputy as soon as may be after its finding, and at least twenty-four hours before trial, (Section 218, page 230, Criminal Code.)

Now we are willing to concede that this is one of his substantial rights, but it is no more substantial than his right of cross examination; and it no more follows in one case than the other that its enjoyment should be evidenced by the journal entries.

If the judge wholly denies or improperly restricts his

right of cross examination, he can save by bill of exceptions and vindicate, in this court, such right.

The same course is open to him if the district judge attempts to force him to a trial without a service of the copy of the indictment, and within the time prescribed by law. The question is, ought the journal entries to show this service?

Not only have the learned and experienced counsel for plaintiff in error failed to show us any decision or form directly sustaining their position, but the decisions cited, by the prosecuting attorney, are directly in point and sustain the legal fullness of this record.

Bishop says : "It is not necessary it should appear by the record that the names of the witnesses were endorsed on the back of the indictment; that the prisoner was furnished with a copy of the indictment; that the court committed the jury to the charge of a sworn officer during a recess; that they were placed in the charge of a sworn officer when they retired to consider their verdict, or that the oaths to the witnesses were administered according to law. The defendant should take advantage of any irregularity by objecting at the time; and if his objection was overruled, the fact should be preserved by bill of exceptions." 1 Bish. Crim. Pro., Section 932; 2 Gilman, 540; 3 Gilman, 644; 8 Ohio State Rep., 102, *Vouts vs. The State.*

The case last cited is directly in point. The error assigned was the same. The statutory provision was substantially the same, and what is more there is a constitutional provision in Ohio asserting the right. Still the court decides that there is no error in the omission in the record. The court say : "This provision of the statute is directory as to a duty to be performed on the part of the state preliminary to the trial. The performance of this duty, however, is not required to be made a matter of record and, therefore, the mere omission of such fact in the record of the judgment and proceedings cannot be error. In the absence of any proof to the contrary, it will be presumed that what the law required of the officers acting for the state, was done. If a defendant in a criminal prosecution wishes to avail himself of such omission of duty on the part of the state, he

must do it on motion before trial, or interpose it as an objection to being put on his trial, and show the omission on the record by bill of exceptions." This was not done in this case.

Again the court say : "And it being of such a nature as to be a subject of waiver, if the party accused proceed to trial without making the objection, it is a waiver of the omission, and he cannot, after the trial, interpose the objection to affect the validity of the proceeding on the trial. True it is that it has been said in broad and unqualified terms that, in a criminal case, a defendant can waive nothing. But the inaccuracy of this assertion is shown in every day's practice in our criminal courts. There are some things, it is very true, in criminal cases which cannot be waived. None of the proceedings essential to the jurisdiction, and the foundation of the judgment of the court can be waived. But there are other proceedings in a criminal prosecution which a defendant may waive, and among these is the copy of the indictment."

The above enumerations, we believe, contain a correct statement of the law, upon this point, and, therefore, we find no error in the record, so far as this assignment is concerned.

2. The record after stating the verdict of the jury—and the demand of the prisoner if he had any legal cause to show why judgment should not be pronounced against him—continues thus: "It is considered by the court that the prisoner, Augustus Lytle, be taken hence to the place from whence he came and thence to be taken to the place of execution; and, that there on the 20th day of March next, between the hours of nine o'clock in the forenoon and three o'clock in the afternoon, be hanged by the neck until he be dead."

It is urged that this is a sentence and not a judgment, and that there ought to have been a judgment by the court that the defendant was guilty of murder in the first degree, and that he suffer death.

The writer of this opinion has always, through excessive caution, recognized in his record such a distinction, but a careful examination of authorities convinces me that there is no.

foundation for the distinction. Judgment and sentence are synonymous. 2 Burrells Law Dictionary, 106 and 453; 17 Pick., 296, *Com. vs. Richards.*

In this case Chief Justice Richards, in pronouncing the opinion of the court, says: "It has generally been considered, we believe, that as the sentence is the final act in a criminal proceeding that it constitutes the judgment." To the same effect, *Com. vs. Lockwood*, 109 Mass., 328; Black. Com., Book 4, page 376. To the same effect are all the forms. 1 Bish. Crim. Pro., Section 928; *Com. vs. Webster*, 5 Cush., 408; *Leschi vs. The Territory*, 1 Wash., *infra.*

Justice Swan, in a dissenting opinion, based on other points however, in the case cited from 8 Ohio, says, and we endorse the sentiment: "If any human event should be wrought out with the certainty of fate, it is the conviction and punishment of a deliberate murder. While no rule of law should be violated to reach the guilty, so no new technicality or artificial subtlety should be introduced to stay condign punishment." And we may safely add that the unnecessary multiplication of particulars not essential to the full assertion and protection of the rights of the defendant, and the making of them a part of the record and allowing their omission in the record to be assigned as error, amounts but to an obstruction of justice.

It is a subordination of justice to an excessive technicality; gives impunity to crime and no protection to innocence. And while we propose to stand firmly by the technical rules which are already established—we do not propose to add to their number or stringency by construction. Let the judgment be affirmed and the cause remitted to the District court to fix the time of execution.