FRANKLYN E. MEYER, APPELLANT, v. MISSOURI REAL ESTATE COMMISSION, RESPONDENT.—183 S. W. (2d) 342.

Kansas City Court of Appeals. November 6, 1944.

*Clem F. Storckman* for appellant.

478

*Roy McKittrick*, Attorney-General, and *Covell R. Hewitt*, Assistant Attorney-General, for respondent.

BLAND, P. J.—This is a suit for a declaratory judgment, brought to determine the right of the Missouri Real Estate Commission to revoke plaintiff's license as a real estate broker and salesman, on the ground that he had been convicted of the offense of embezzlement. The court rendered a judgment declaring that defendant has the authority to revoke plaintiff's license. Plaintiff has appealed.

The facts show that plaintiff was indicted in the District Court of the United States for the Eastern Division of the Eastern District of Missouri, on January 11, 1943. The indictment charged him, in eight counts, with embezzling funds of the University City Federal Savings & Loan Association. None of the charges against plaintiff had to do with any act of his performed in connection with his vocation as a real estate broker and salesman. Count one of the indictment was stricken upon motion of the United States Attorney and plaintiff pleaded *nolo contendere* to each of the other counts. Whereupon, the court, on April 27, 1943, made the following order.

''For good cause shown, the Court doth Order that the imposition of sentence upon the defendant under each of counts two, three, four,

five, six and seven and eight of the indictment be, and the same is hereby suspended and said defendant, Franklyn E. Meyer, placed on probation thereunder for a period of Three (3) Years in accordance with conditions of probation this day filed herein''.

The evidence further shows that no other criminal proceedings have ever been instituted against the plaintiff and that from and after April 27, 1943, he has been on probation in accordance with the order and that such probation has not been revoked and that no other or further order has been made in the case.

The Legislature of this State, in 1941 (see Laws 1941, p. 424), passed an act creating the Missouri Real Estate Commission which provides, among other things, for the licensing of real estate brokers and real estate salesmen and for the suspension and revocation of the licenses of such brokers and salesmen. Many specific grounds are prescribed in Section 10 of the statute on which the Commission may revoke such licenses. Proceedings under this section contemplate a hearing on the question of the guilt of the person proceeded against but, under the provisions of Section 14, it is made mandatory for the Commission to revoke such licenses ''where during the term of any license issued by the Commission the licensee shall be *convicted* in court of competent jurisdiction in the State of Missouri or any State (including Federal Courts) of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud, or other like offense or offenses and a duly certified or exemplified copy of the record in such proceedings shall be filed with the commission''. (Italics ours.)

The trial court held that the plea of *nolo contendere,* made by the plaintiff to the indictment in the Federal Court, was a conviction within the meaning of the Missouri Real Estate Commission Act, and that the defendant has the right, power and authority to revoke plaintiff's license as a real estate broker and salesman under the provisions of that act. As before stated, plaintiff has appealed.

There is no contention made that this is not a proper proceeding under the Declaratory Judgment Act. Plaintiff insists that, as the Federal Court, pending the imposition of sentence upon him, upon his plea of *nole contendere,* placed him on probation, he has not been convicted of the offense charged against him within the meaning of the Real Estate Commission Act, as no final judgment has been entered against him.

Some question is raised in the brief as to whether a plea of *nolo contendere* in the Federal Court is equivalent to a plea of guilty or a confession of guilt. *For the purpose of this case,* there is no question but that the plea of *nolo contendere* was equivalent to such a plea of guilty and confession. [See Neibling et al. v. Terry, 177 S. W. (2d) 502.]

The term "conviction" has more than one meaning. In Scott v. Am. Express Co., 233 S. W. 492, plaintiff sued to recover a reward offered for the arrest and conviction of a train robber. The alleged robber was tried and found guilty by a jury and was duly sentenced. He appealed. While the appeal was pending the robber died and the criminal proceedings abated. It was held by the Springfield Court of Appeals in that case that, the word "conviction" meant a *final judgment*, which settles the question of guilt of the defendant so that, as a result, punishment of the offense must follow. The court held that there had been no conviction within the meaning of the offer of the reward in the case, for the reason, that the accused, having died pending his appeal, the prosecution abated. Plaintiff in that case applied to the Supreme Court for a writ of *certiorari*, which was issued. The Supreme Court rendered an opinion in the case quashing the writ. [See State ex rel. Scott v. Cox, 243 S. W. 144.] In the course of the opinion the court said: "The word 'conviction' has more than one connotation. Its implications in a given case are to be determined from the connection in which it is used. We find abundant illustration of this in the authorities cited by relator. [7 Am. & Eng. Ency. of Law (2 Ed.) 497, and notes.] According to some of these, the technical common-law meaning of the term, when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt. [Commonwealth v. Lockwood, 109 Mass. 323, 12 Am. Rep. 699.] In others it is held that the word 'conviction' may be, and frequently is, used in a more comprehensive sense, including the judgment of the court upon the verdict or confession of guilt. [Faunce v. People, 51 Ill. 311.] While in still another, the term, as used in a Federal statute, is construed as having within its implications both trial and punishment."

In State v. Townsley, 147 Mo. 205, the defendant was under the age of eighteen years at the time he pleaded guilty to the charge of attempted rape. He was over that age when he was sentenced to the penitentiary where he could not be committed if under eighteen years of age. The court held, l. c. 209: "The Legislature used the word 'convicted' in its broadest and most comprehensive sense, as one judgment, and as the judgment was not rendered until after defendant arrived at the age of eighteen years that it should be affirmed."

Under the weight of authority it is held: "That where the context of the statutes refers to the successive steps in a criminal case, or any particular stage of such a prosecution, as distinguished from the others, these words apply simply and solely to the verdict of guilty; but where the reference is to the ascertainment of guilt in another proceeding, in its bearing upon the *status* or rights of the individual in a subsequent case, then a broader meaning attaches to the expressions, and a

'conviction' is not established or a person deemed to have been 'convicted' unless it is shown that a judgment has been pronounced upon the verdict.'' [People v. Fabian (N. Y.), 85 N. E. 672, 675.] [See, also, Smith v. Commonwealth (Va.), 113 S. E. 707.] In the latter case the statute authorized the circuit court to remove state and county officers convicted of any offense involving moral turpitude and it was held that the statute required a judgment of conviction in addition to a verdict of the jury before such an officer could be removed. In the course of the opinion in that case the court said, l. c. 708, 709:

''And the authorities are very numerous and practically unanimous in their holding to the effect that, under statutes disqualifying persons from testifying as witnesses who have been convicted of crimes mentioned in the statute, the disqualification does not arise upon the mere conviction of the crime by the verdict of the jury, but only where there has been a judgment of conviction, without which, as is uniformly held, there has been no conviction within the meaning of such statutes. [1 Bish., New Cr. Law (8 Ed.), par. 975; 7 Am. & Eng. Ency. L. (New Ed.), pp. 498-502, and note 1 on page 502; People v. Whipple (N. Y.), 9 Cow. 707; Fitch v. Smallbrook, T. Raym. 32; Rex v. Castell, 8 East. 77; State v. Damery, 48 Me. 327; Gibbs v. Osborn (N. Y.), 2 Wend. 555, 20 Am. Dec. 649; Dawley v. State, 4 Ind. 128; Commonwealth v. Gorham, 99 Mass. 420; Marion v. State, 16 Nebr. 349, 20 N. W. 289; Bishop v. State, 41 Fla. 522, 26 So. 703; 16 C. J. 1341 (3).]

''In Bish., New Cr. Law (8 Ed.), par. 975, just cited, this is said:

'' 'Judgment necessary.—A mere plea or verdict of guilt works no infamy, for until judgment it has not reached the conclusion of guilt. So that this disqualification (to be a witness), like common-law forfeiture, does not come from the mere crime, or the mere conviction of it, or the punishment, but from the final judgment of the court. Until judgment, the accused or indicted is competent to testify'—citing numerous cases in England as well as in the United States.

''There is the same practically unanimous holding of the authorities where the statute disqualifies from voting persons convicted of crimes mentioned in the statute. [Gallagher v. State, 10 Tex. App. 469; Egan v. Jones, 21 Nev. 433, 32 Pac. 929; People v. Fabian, 192 N. W. 443; 84 N. E. 672; 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 100.]

''By the great weight of authority there is the same holding as to the necessity of a judgment of conviction to bring the case within the meaning of 'convicted' or 'conviction' in statutes imposing any punitive consequences as the result of the conviction of the offense mentioned in such statutes.

. . . . . .

''Where the context in which the word is found concerns, not merely the particular case, but the effect of the conviction of the accused in one case, when pleaded or given in evidence in another, the word

'conviction', or 'convicted', is more comprehensive and includes the judgment of the court upon the verdict or confession of guilt." [See, also, Faunce v. The People, 51 Ill. 311; State v. Rose, 52 Atl. 943; Commonwealth v. Lockwood, 109 Mass. 323, 329; 1 Bishop on Criminal Law (8 Ed.), sec. 975.]

In People v. Fabian, *supra*, the State Constitution provided that the Legislature should enact laws excluding persons convicted of any infamous crime from the right of suffrage, and the Legislature enacted a statute declaring that no person who had been convicted of a felony should register or vote unless he has been pardoned and restored to the rights of citizenship. It was held that the term "persons convicted" meant persons against whom a judgment of conviction had been rendered for an infamous crime, and not merely a rendition of a verdict of guilty against him and suspended sentence without judgment. In the course of the opinion the court said, l. c. 674:

"I think this question is correctly answered in the dissenting opinion of Mr. Justice JOHN PROCTOR CLARKE, in the Appellate Division, by his statement that 'where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law, it is that condition which is evidenced by sentence and judgment, and that where sentence is suspended, and so the direct consequence of fine and imprisonment are suspended or postponed temporarily or indefinitely, so, also, the indirect consequences are likewise postponed.'" [See, also, Prewitt v. Wilson (Ky.), 46 S. W. (2d) 90; State v. Houston, 103 N. C. 383; People ex rel. v. Page, 211 N. Y. S. 401; Commonwealth v. Carelli et al., 90 Pa. Sup. 416; 24 C. J. S. 47, 187.]

In Page v. Board of Medical Examiners (Fla.), 193 So. 82, it was held that where a physician had been found guilty of an offense and placed on probation without sentence having been entered he had not been convicted so as to authorize the revocation of his license. To the same effect is State Medical Board v. Rogers (Ark.), 79 S. W. (2d) 83.

We have been cited to no authority holding that the suspension of the imposition of the sentence, or the suspension of the sentence, itself, upon a plea or a verdict of guilty, and the placing of the defendant upon probation, is a final judgment within the meaning of the statutes giving effect to such proceedings in another proceeding.

It is held that where there has been a suspended sentence there is no final judgment. [People v. Page, *supra*, l. c. 405; 24 C. J. S., pp. 47, 187.] If this is so it would seem that, certainly, where there has been no sentence at all but merely a suspension of the imposition of sentence, as in this case, there has been no such judgment.

We are of the opinion that the word "conviction", as used in the Missouri Real Estate Commission Act, should be taken in its most comprehensive sense, that is, to include the judgment of the court upon a verdict or confession of guilt.

We have heretofore approached this subject from a more or less technical viewpoint but there are practical considerations as to why the word "conviction" in the statute before us should be taken in its broader sense. In this connection we wish to review to some extent the Federal Probationary Act to ascertain what effect is to be given to the order suspending the imposition of sentence and placing the defendant on probation as related to the question as to whether any final judgment has been rendered when such a course of action has been taken by the court.

Section 724, Title 18, U. S. C. A., provides that "When it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby (the court) shall have power . . . to suspend the imposition or execution of sentence and to place the defendant upon probation".

"The statutes providing for suspension of sentence and probation are said to be remedial and hence are to be liberally construed." [24 C. J. S., p. 55.]

In Biggs v. United States, 14 Fed. (2d) 5, 9, the court said the Federal Act is to be viewed as "having regard to its general purposes, and the wise and humane things that should be done in its due administration, looking to the amelioration of the condition of the unfortunate in whose behalf it was enacted. The purpose of the act was to give to the Federal District Courts a free hand in humanely dealing with criminal classes which come before them, and much discretion, of course, should be allowed, having regard to the offense charged," etc.

In Zerbst v. Kidwell, 58 Sup. Ct. Rep. 872, 874, the court said: "Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board."

The evidence shows that the business of plaintiff herein is that of a real estate broker, and it would appear that to deprive him of his occupation might well shut the door of opportunity against him and impede, if not prevent, his restoration to society as a good social risk. In cases where the defendant is put upon probation the federal court, no doubt, finds that there are circumstances surrounding the life of the defendant to lead it to believe that he will be a good risk for reformation. If this is true it appears to us that his future should not be clouded by depriving him of his occupation. Consequently, having in mind the beneficent purposes of the Federal Act we are of the opinion that it was not intended by Congress that a suspension of imposition of sentence and placing of defendant on probation should be construed to be a final judgment of conviction in the case such as to work injury to him in another proceeding. It might be further observed that while the probationary period is running in these cases

it may appear to the Federal Court that the best interests of the public and the defendant would be served by modifying the conditions of the probation, as for instance, changing the period (Scalia v. United States, 62 Fed. (2d) 220), or defendant may be discharged altogether from supervision and the proceedings terminated against him as provided by sections 724, 725 of the Federal Statute, or, the court may see fit, in order to remove the stain, as far as possible, of the record made in the case against plaintiff, to dismiss the proceedings against him entirely.

Since the statutes (providing for the suspension of sentence and placing accused on probation after a plea or verdict of guilty) look to the reformation and not to a final goal of punishment, where the object of probation seems to the court to have been accomplished in such a way as not to require the punishment of accused, the court may dispose of the same finally by a dismissal thereof, even though the statute does not specifically authorize such action'' [24 C. J. S., p. 53; 16 C. J., p. 1289. See, also, Marks v. Wentworth (Mass.), 85 N. E. 81.]

As long as it is within the province of the Federal Court to dismiss the criminal proceedings against the plaintiff herein, it can hardly be said that there has been a final judgment of conviction.

We have examined the cases of Korematsu v. United States of America, 63 S. Ct. Rep. 1124, and Berman v. United States, 58 S. Ct. Rep. 166, cited by the defendant and find them not in point. These cases have to do with the right of the defendant to appeal in cases of the suspension of the imposition or execution of sentence after a finding or verdict of guilty, and it was held in those cases that an appeal would not lie, under the circumstances, as from a final judgment. The court in those cases pointed out the hardship that might be imposed upon the defendant by a failure to permit an appeal under the circumstances because, whereas, there was no sentence being executed, disciplinary measures had been taken against the defendant.

The court in Korematsu v. United States, *supra*, l. c. 1126, stated ''He may, during the probationary period, be required to pay a fine, or make reparation to aggrieved parties, or provide for the support of persons for whom he is legally responsible. [18 U. S. C., par. 724.] He is under the 'supervision' of the probation officer whose duty it is to make reports to the court concerning his activities (18 U. S. C., par. 727, 18 U. S. C. A., par. 727), and 'at any time within the probation period the probation officer may arrest the probationer wherever found, without a warrant, or the court which has granted the probation may issue a warrant for his arrest.' [17 U. S. C., par. 725, 18 U. S. C. A., par. 725.] These and other incidents of probation emphasize that a probation order is 'an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline.' ''

Various Federal Courts of Appeals had held that where the sentence had been suspended there was no final judgment and no appeal

was allowable, following cases, among others, of the Supreme Court of the United States. The Supreme Court in the Korematsu case, *supra,* referred to some of these cases where it was held that there is no final judgment in a criminal case prior to ,sentence, but did not overrule them. We are of the opinion that the two cases cited by the defendant on this point are not applicable, but that they fall into that class of cases mentioned in People v. Fabian and Smith v. Commonwealth, *supra,* as an appeal is merely a step in the particular case. However, where the reference is to the ascertainment of guilt in another proceeding (as here), and the question as to its bearing upon the status or rights of the individual in a subsequent case is under consideration, a broader meaning is to be attached to the word "conviction", and a person is not deemed to have been convicted unless it is shown that a judgment is pronounced upon a verdict or plea of guilty. The rule is well stated in People v. Fabian, *supra,* as follows: "Where the sentence is suspended, and so the direct consequence of fine and imprisonment are suspended or postponed temporarily or indefinitely, so, also, the indirect consequence are likewise postponed."

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in favor of the plaintiff in accordance with this opinion. All concur.