Argued 18 December, 1906 ; decided 12 January, 1907.

### Ex Parte TANNER.

88 Pac. 301.

PLEA OF GUILTY AS A CONVICTION.

1. Whether one who has pleaded guilty has been "convicted" of the offense with which he is charged is discussed but not decided.

ATTORNEY—PUNISHMENT FOR PERJURY—EXTENUATING FACTS.

2. Although the commission of the crime of perjury involves moral turpitude justifying the removal of an attorney, under Section 1067, B. & C. Comp., the facts in this case do not require so extreme a penalty, and a suspension for ninety days will accomplish the purpose of the law.

Proceedings for the disbarment of Albert Hawes Tanner, on a charge of perjury, presented by the Grievance Committee of the State Bar Association.          SUSPENDED.

For the petition there was an oral argument by *Mr. Frank Salisbury Grant.*

*Contra,* there were oral arguments by *Mr. William Wick Colton* and *Mr. Charles Erskine Scott Wood.*

PER CURIAM.  This is a proceeding instituted by the Grievance Committee of the State Bar Association for the removal of Albert H. Tanner, an attorney of this court.  The information charges that on February 8, 1905, the grand jury of the United States, inquiring for the District of Oregon, returned an indictment against Tanner, charging him with the crime of perjury; that upon his arraignment Tanner entered a plea of guilty, but that no further proceedings were had in such action until July 17, 1906, when, on motion of the government, the indictment was dismissed for the reason that Tanner had been

pardoned by the President of the United States. It is then averred, as conclusions of law rather than as facts, that the plea of guilty amounted to a conviction of a felony involving moral turpitude, and that the pardon did not absolve Tanner from the consequences of such conviction or restore him to his right to hold public office. Tanner answered, admitting the facts as stated in the information, but denying the conclusions of law therein, and for a further and separate answer alleged:

"That, after this respondent had pleaded guilty to said indictment, the Honorable Charles B. Bellinger, District Judge of the United States for the District of Oregon, and having full jurisdiction of the matter, suspended sentence and all further proceedings in the matter, and nothing further was done, save and except that this respondent was granted a full and unconditional pardon for said offense by the President of the United States, and, before said pardon was issued, this respondent was called as a witness in the case of John H. Mitchell, and, being duly sworn as a witness, was objected to by the said Mitchell on the ground that this respondent had been convicted of a felony under the provision of Section 5392, Revised Statutes of the United States* (U. S. Comp. St. 1901, p. 3653), and the presiding judge at said trial, Judge De Haven, ruled that this respondent was a competent witness, for the reason that no judgment or conviction had ever been pronounced in the matter, and this respondent alleges that he has never been convicted of any felony within the meaning of Sections 1067 and 1057 of the laws of Oregon, known as Bellinger & Cotton's Code.

"And for a further and separate answer and defense this respondent alleges that said alleged perjury was committed, not in the actual trial of any cause, but during the appearance of this respondent before a grand jury of the United States, sitting at Portland, Oregon, to investigate certain alleged criminal acts of John H. Mitchell, Senator of the United States, and that this respondent appeared before said grand jury only as a citizen, and said alleged perjury did not occur in any professional matter, or in the discharge of any professional duty to any court or client.

"And for a further and separate answer and defense, this respondent admits, without any reservation whatever, that, in testifying before the grand jury which sat to investigate the charges

*5 Fed. Stat. Ann. 701.

against Senator John H. Mitchell to facts other than those which were the strict and absolute truth, this respondent made a great mistake and committed a wrong which will follow him through his entire career, and this respondent does not, by this answer, or by any subsequent proceeding which he shall take in this matter, intend to belittle the gravity of his offense, but, in extenuation of this offense, he shows to this honorable court the substantial facts of the matter, as follows:

"This respondent had been a close and intimate friend of Senator John H. Mitchell since 1882, and his partner in the practice of the law since 1890, and that said Senator Mitchell had been the close friend, for a lifetime, of this respondent's father-in-law, and, at the time Senator Mitchell returned to Oregon from Washington and appeared to testify before the grand jury investigating the charges against him at Portland, Oregon, Senator Mitchell assured this respondent that these attacks against him were the result of political intrigue and the persecution of his enemies in the political faction opposed to him. He represented to said respondent that, at the worst, the practice of taking money for appearances before the department had at one time been customary and proper, and that the charges themselves were simply an accusation of a breach of the written law, and not a breach of any inherent morality, and he implored me, in the most pathetic manner, to stand between him and disgrace and ruin in his old age, after a lifetime of public service, and he represented that his fate was in my hands, and mine alone.

"Senator Mitchell was a man of a most amiable character, and respondent felt for him a warm friendship and a sympathy which he cannot express, and he felt that he was under the obligations of loyalty to him which justified his joining him in his effort to protect himself in his old age from the assaults of political enemies. He was made to feel, and did feel, that, if he refused to protect him in his extremity, he would occupy the position of an ingrate and a traitor, and he desires to say, as a part of his sworn answer, that it was a situation difficult to judge by any who have not been placed in a similar position.

"This respondent alleges that he begged and entreated Senator Mitchell to go before the grand jury with the facts just as they were and make no concealment, but that Senator Mitchell said that, under ordinary circumstances, he would do so, but this was a case in which neither justice nor mercy would be shown him; that the grand jury had been carefully selected and that any-

49 OR,—3

thing like an honest confession of the facts would have a result which the facts themselves did not warrant and would ruin him forever; that he could not hope to have another term in the senate, and that all he asked now was to be allowed to go into the retirement of old age and not end his days in the common jail, and, though this respondent, until the last, protested against what he was asked to do, this respondent did not have the strength to resist the most heartrending pleadings of a man like Senator Mitchell, to whom this respondent was tied by bonds of long association, obligation and most kindly feeling, and it was under these circumstances that this respondent, as an individual citizen, appeared before the said grand jury, and, rather than seem a traitor to Senator Mitchell, this respondent testified that the partnership agreement between this respondent and Senator Mitchell was to the effect that all moneys paid for services in the Land Department belonged to this respondent individually, whereas in fact this was not so, but said moneys belonged to Senator Mitchell and to this respondent jointly.

"And this respondent shows to the court that it has never been alleged, and it cannot truthfully be alleged, that this respondent had any advantage to gain by his false testimony before said grand jury, or that he was in any way personally interested in what said grand jury might or could do, but that his conduct was influenced wholly and entirely by a feeling of loyalty toward Senator Mitchell and a great pity for his distress. And this respondent shows that afterward he appeared in open court, the said grand jury being present, and told the whole truth, exactly as the facts warranted, and that he so testified when sworn as a witness, during the course of the trial. This respondent further shows to the court that he has practiced law in the City of Portland for more than twenty-five years, without any blemish on his name, either personal or professional; that he has no other profession or means of earning a livelihood, and he does not believe that this one mistake, under the circumstances above suggested, amounts to such moral turpitude as renders him an untrustworthy and unfit member of the honorable profession of the law, but he believes that, without any danger to society, or any injury to this honorable profession, which is itself an advocate of mercy, he ought to be allowed an opportunity to prove that he can make atonement for this one error of his career."

It is stipulated that the answer should be deemed and treated as evidence, and that, if Tanner were called as a witness, he

would testify as therein stated. Upon the record as thus made, together with a copy of the testimony of Mr. Tanner as given on the trial of *United States* v. *Mitchell* in the federal court, the cause was submitted.

The proceeding is instituted under Sections 1066 and 1067, B. & C. Comp. By Section 1066 it is provided that an attorney shall be disbarred by this court upon proper proceedings for that purpose whenever it shall be made to appear to the court "that, if he were then applying for admission to the bar his application should be denied because of unprofessional conduct." and Section 1067 reads:

"An attorney may be removed or suspended by the Supreme Court for either of the following causes, arising after his admission to practice: 1. Upon his being convicted of a felony or of a misdemeanor involving moral turpitude, in either of which cases the record of his conviction is conclusive evidence; * *"

The interpretation of Section 1066 is involved in doubt. It provides that an attorney shall be disbarred when it is made to appear that, if he were applying for admission, his application should be denied because of "unprofessional conduct." How one who has never been admitted to the bar or practiced as an attorney can be guilty of "unprofessional conduct" is not clear. But, assuming that the statute means, as it probably does, that an attorney shall be disbarred when it appears that his general moral character or unfitness is such that, if he were applying for admission, his application would be denied, there is no showing here why the statute should be invoked in this case. The record discloses, and it is admitted, that Mr. Tanner has been a member·of the bar of this court for 25 years, and that his personal character and professional standing and integrity have never been impugned in any way until the transaction upon which this proceeding is based.

1. It is very questionable whether a mere plea or verdict of guilty is a conviction within the meaning of Section 1067. In common parlance and for many purposes the word "conviction,"

when used in a statute, means the judicial ascertainment of guilt by plea or verdict: *Ex parte Brown,* 68 Cal. 176 (8 Pac. 829) ; *Commonwealth* v. *Lockwood,* 109 Mass. 323 (12 Am. Rep. 699). But when a conviction is made the ground of some disability or special penalty there are many respectable authorities holding that a final adjudication by judgment is essential: *Faunce* v. *People,* 51 Ill. 311; *Commonwealth* v. *Gorham,* 99 Mass. 420; *State* v. *Townley,* 147 Mo. 205 (48 S. W. 833) ; *Blaufus* v. *People,* 69 N. Y. 107 (25 Am. Rep. 148) ; *Smith* v. *Commonwealth,* 14 Serg. & R. 69; *Commonwealth* v. *Miller,* 6 Pa. Super. Ct. 35. It is unnecessary, however, to decide the question at this time. The defendant by his answer waives all technical defenses, freely admits his guilt, and makes a full and complete statement of the facts, and it only remains for the court to ascertain the judgment which should be rendered thereon.

2. We need not comment on the facts. They speak for themselves. There are circumstances which call for the exercise of clemency, but that does not justify the offense. The crime with which the defendant is charged, and the commission of which he admits, was a serious one, deliberately and intentionally committed, and the court would be unmindful of the duty it owes to itself, to the profession and to the public, if it allowed it to go unrebuked. Proceedings for the disbarment of an attorney, however, are not for the purpose of punishing him for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and purity of the profession, protect the courts, preserve the administration of justice and protect clients, and it is believed that it is not necessary, in order to accomplish these purposes, that the defendant should be permanently disbarred, but he will be suspended for a period of 90 days.

Judgment accordingly.                                SUSPENDED.