Submitted June 8; defendant suspended June 29; new complaint filed and defendant disbarred October 11, 1937

## *In re GORDON S. WELLS

### (69 P. (2d) 945)

*Clifford G. Holland*, of Portland, for Oregon State Bar.

No appearance for defendant.

BEAN, C. J. In a proceeding brought before the Oregon State Bar, Gordon S. Wells, a member of the bar of this state, was tried upon charges of unprofessional conduct, which were substantially as follows: One Fred Miller, a resident of Lane county, Oregon,

---

*The opinion in this case was filed on the 29th day of June and on the following day, June 30, Gordon S. Wells was convicted on a felony charge in the circuit court of the state of Oregon for the county of Lane. After the service of a new complaint and default thereon the defendant was permanently disbarred by the Supreme Court without a formal written opinion on October 11, 1937.

died intestate, leaving an estate of some value but no heirs. One George Davenport was duly appointed administrator of said estate by the county court of Lane county, and George Davenport employed Gordon S. Wells as his attorney for the purpose of administering the estate. On or about September 5, 1933, the county court of Lane county issued an order approving the final report and account of the administrator and directing him to pay and deliver to the state treasurer the residue of the estate, consisting of $618.43 in cash, a Lane county, Oregon, road bond and an assignment of a claim against the Commercial State Bank of Springfield, Oregon. On or about September 5, 1933, the administrator paid the cash and delivered the personal property to Gordon S. Wells, his attorney, with instructions to pay and deliver the same to the treasurer of the state of Oregon in compliance with the order of the county court of Lane county. Wells received said sum of $618.43 and said personal property, as attorney for the administrator, and then and there failed to pay and deliver the same to the state treasurer in compliance with the order of the county court. On or about February 24, 1936, the Oregon State Land Board made written demand upon Wells for the cash and personal property but received no response from Wells. A further demand was made upon him in person by Arthur W. Orton, special investigator for the Oregon State Land Board. Wells thereupon surrendered the personal property to Arthur W. Orton, but failed and refused to pay the sum of $618.43, and on March 9, 1936, the Oregon State Land Board made a further written demand upon Wells for the sum of $618.43, together with interest thereon in the sum of $96.68, computed at the rate of 6 per cent per annum from September 5, 1933, to April 13, 1936. Wells paid the sum of $618.43

during the month of July, 1936, but, it is alleged, failed and refused and now fails and refuses to pay said interest in the sum of $96.68. The complaint further alleges that Gordon S. Wells wrongfully, feloniously and in violation of said instructions of the court, and with intent to defraud the state of Oregon, appropriated and converted said sum of $618.43 to his own use and benefit.

The trial committee and the Board of Governors of the State Bar found that the testimony sustained the allegations of the first cause of complaint and that defendant was guilty.

The record shows that on or about April 13, 1936, the defendant turned $618.43 in by wire to the state treasurer, and that on or about July 1 of that year he paid the interest on the above amount in the sum of $96.58, which was also sent in by a telegram. The bond and the assigned claim were turned over, the bond having the interest coupons thereon intact.

For a second cause of complaint it is alleged that Fred E. Smith, an attorney of the city of Eugene, Oregon, foreclosed two mechanics' liens on behalf of O. Peterson and G. A. Andreason, co-partners, doing business as Front Street Garage, against one Charles F. Stutz. Gordon S. Wells was employed as attorney for said defendant. The suit was compromised and settled for the sum of $150 by Fred E. Smith, acting as attorney for plaintiff, and Wells, acting as attorney for defendant. Thereupon Wells obtained the sum of $150 from defendant and instead of paying it over to Fred E. Smith for repayment to plaintiff Wells retained it and delivered his personal check to Fred E. Smith for said sum in final settlement of the foreclosure suit, which check was returned to Fred E. Smith by the bank upon which it was drawn with advice that Wells did

not have sufficient funds in the bank with which to pay the check. It is alleged that Wells wrongfully appropriated and converted same to his own use.

The Board of Governors found that the evidence sustained the second cause of complaint and that defendant was guilty. The testimony shows that about 10 days after the demand Wells paid the amount of the check.

For a third cause of complaint against Wells, it is alleged, in substance, that Wells was employed as attorney for one L. M. Robinson for the purpose of defending an action in the justice court of Lane county, Oregon, which action was tried in said court and decided for plaintiff and against Robinson. Wells appealed to the circuit court of Lane county on behalf of Robinson. At the time the appeal was taken Wells represented to Robinson that cash in the sum of $200 would be required for an appeal bond. Robinson thereupon paid the sum of $200 in cash to Wells for use as a cash appeal bond. Instead of posting the $200 as bond, Wells secured one Edward Trapp to sign an appeal bond as surety, without compensation for so acting, and Wells retained for his own use and benefit the said sum of $200. It is alleged that this was done with the intent and purpose to deceive and mislead his client and to obtain for his own use said $200. The Board of Governors found the defendant guilty of the third cause of complaint.

The testimony shows that Robinson did not want to obtain a surety and proposed to put up the money. About two weeks after the case in the circuit court was decided in favor of Robinson he called on Wells for the bond money. Wells informed him that he did not have the money then, but he afterwards paid it in installments, with interest. Robinson did not complain of this treatment by Wells.

For a fourth cause of complaint it is alleged that about February 18, 1936, Lawrence B. Osterman, an attorney of the city of McMinnville, Oregon, instituted an action in his own name, as plaintiff, in the justice court of Lane county, Oregon, on a promissory note that had been assigned to him for collection by the Carlton Nursery Company and Wells was employed as attorney for defendants Avon D. Babb and Frances E. Babb. On or about February 27, 1936, said Lawrence B. Osterman agreed with Wells to compromise and settle said action by immediate payment of $100 to Osterman for repayment to his assignor. Wells thereupon obtained said sum of $100 from defendants, and, instead of paying said sum to Lawrence B. Osterman for repayment to his assignor, Wells retained said sum, and on or about March 17, 1936, delivered his personal check in the sum of $100 to Osterman. On or about March 21, 1936, said check was returned to Osterman from the bank with advice that Wells did not have sufficient funds on deposit to pay the check. On April 6, 1936, Osterman presented the check in person to the bank and was again advised that Wells did not have sufficient funds on deposit to pay the check. It is alleged that Wells took said action with intent to injure and defraud plaintiff and plaintiff's assignor, and knowingly, wrongfully and feloniously appropriated and converted said sum of $100 to his own use.

The Board of Governors found the testimony sustained the fourth cause of complaint and that defendant was guilty of the charge contained therein.

The record shows that after Osterman returned to McMinnville, the next day Wells wired the $100 to him, and afterwards did some work amounting to $25 to square the matter.

In the fifth cause of complaint it is alleged that defendant did some work for a party who paid Wells a small amount and thought the amount was not earned. The Board of Governors found defendant not guilty of the fifth cause of complaint; therefore this will not be further mentioned.

Based upon the findings of the Board of Governors, adjudging Wells guilty of professional misconduct, the Board of Governors recommended that Wells be permanently disbarred from the practice of law in the state of Oregon.

The testimony shows that heretofore Wells had borne a good reputation for honesty in his neighborhood, and, generally speaking, he gave satisfaction to his clients. He had acted as deputy district attorney for about three years and was engaged in the prosecution of criminal cases. He graduated from the University of Oregon and was admitted to practice law in this state in 1921. Wells testified as a witness and appears to admit practically everything to which reference has been made and does not attempt to cover up or color any of the matters.

His story is, as to the first cause of complaint in regard to the $618.43, that during the depression when he was crowded for money his wife was ill in both body and mind and he used a small part of that sum, and after that he did not have the money to make it good, but used additional small amounts and was unable to adjust the matter until the time he paid it. He stoutly contends that it was not his intention to defraud anyone when he used the money at different times. He does not appear to testify in excuse of what he did, but only in explanation, and says that he had some ten or fifteen thousand dollars of earned fees on his books at different times

and expected to make collections in order to meet his obligations.

After a careful examination and study of the records and files before us and of the evidence offered in the disbarment proceedings, we find that the charges made against Wells have been sustained.

The act creating the Oregon State Bar, Chapter 28, Laws of 1935, provides for a Board of Governors consisting of nine members of the state bar, and provides, among other things, that the Board of Governors, with the approval of the state bar given at any regular or special meeting, shall formulate rules of professional conduct, and, when such rules are adopted by the supreme court, shall have power to enforce the same. It makes such rules binding upon all members of the state bar and gives to the Board of Governors the power, after hearing the charges against any of its members warranting disbarment or suspension for breach of professional conduct or for the violation of any statutory provision, to make an order recommending to the supreme court the disbarment, suspension or discipline of such offending member and provides for the mode of procedure in filing charges and hearings thereon. At any time within 60 days after the filing of such recommendations the defendant has the right to petition the court to review said recommendations and to affirm or disaffirm, modify or reject the order of recommendation. The defendant makes a statement in his testimony, but he files no petition for review.

In the recent case of *In re Rodney J. Kitchen* disbarment proceedings, ante p. 32 (68 P. (2d) 1068), decided June 15, 1937, Kitchen was accused of wrongfully collecting $2,000 as a fee for obtaining an appropriation by the Congress of the United States, appropriating to one Ordway $4,000, in violation of the provisions of the

act which entitled him to collect only $400, or 10 per cent of the amount. He attempted to cover up the matter and endeavored to make a false report to the county court of Klamath county. The Board of Governors recommended that Mr. Kitchen be suspended from the practice of law for a period of six months, and this court determined that Kitchen be suspended from practice for six months and placed on probation for two years thereafter.

In *Ex parte Tanner*, 49 Or. 31 (88 P. 301), a proceeding for the disbarment of Albert H. Tanner on a charge of perjury presented by the grievance committee of the state bar association, it was held that although the commission of the crime of perjury involves moral turpitude justifying the removal of an attorney, under section 1067, B. & C. Comp., the facts do not require so extreme a penalty, and a suspension for 90 days would accomplish the purpose of the law.

In *Ex parte Finn*, 32 Or. 519 (52 P. 756, 67 Am. St. Rep. 550), a disbarment proceeding, it was held that an attorney is guilty of "willful misconduct" in his profession in affixing his officiol jurat as notary public to purported affidavits which were not in fact sworn to before him, and causing them to be filed for use in an action in which he was attorney for one of the parties; that such conduct was a reckless and willful disregard of professional ethics, and that the proceedings for the disbarment of attorneys for misconduct are not for the purpose of punishment but are entertained for the protection of the court, the proper administration of justice, the dignity and purity of the profession, the public good and protection of clients, citing Weeks on Attorneys at Law, § 80. It was decided that suspension would accomplish the purpose of correcting the evil in that case and that there-

fore the defendant would be suspended from practice in all the courts of the state for the period of one year.

It may be that the defendant Wells is entitled to some expression of mitigation on account of his having paid the several amounts, with interest, apparently as soon as he could possibly do so.

It is certain that the consideration of the case and the passing of judgment is a delicate and very unpleasant one. We have no criticism of the recommendation of the Board of Governors. We believe, in order to make an arrangement approaching the nature of a parole, that the ends of justice will be met and there will be no repetition of the acts complained of, if the defendant is suspended from the practice of law, and that he should be suspended from the practice in all the courts of the state for the period of six months and placed on probation for the term of three years, and if, during that time, the defendant Wells is guilty of any unprofessional conduct the charges herein made against him will practically be revived and he will be permanently disbarred from the practice in the courts of this state.

It is so ordered.

----

BELT, J. In my opinion the findings and conclusions of the Board of Governors of the Oregon State Bar should be approved and the defendant be disbarred.

ROSSMAN and BAILEY, JJ., concur.