**KNOB NOSTER EDUCATION, et al., Appellant,**

v.

**KNOB NOSTER R–VIII SCHOOL DISTRICT, Respondent.**

No. WD 61093.

Missouri Court of Appeals, Western District.

April 8, 2003.

Loretta K. Haggard, St. Louis, MO, for appellant.

Steven L. Wright, Columbia, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, VICTOR C. HOWARD, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

Section 165.016.1[1] requires Missouri public school districts to spend a certain percentage of their operating costs on teacher compensation, retirement and tuition. School districts that fail to comply with the statute are generally required to pay a penalty to certain staff members, assuming they are not granted an exemption or revision of the penalty amount pursuant to the statute. § 165.016.6.

The Knob Noster R–VIII School District ("the District") violated section 165.016.1 for the 1996–97 school year. As a result, twenty members of the Knob Noster Education Association ("the Association"), which represents about forty-nine teachers in the district, brought an action for declaratory judgment claiming entitlement to a penalty.[2] Thereafter, the Association and the District filed cross-motions for summary judgment. The trial court heard oral argument on the motions on December 7, 2001, at which time the parties agreed that all relevant facts were stipulated and to submit the case on the merits.

On December 20, 2001, the trial court entered its judgment finding that the District owed a penalty of $66,710.82, but that the District paid the penalty by giving certificated staff members a salary increase that was not required by law and that exceeded the penalty amount. The Association brings this appeal, claiming that the trial court erred in determining that the District paid the penalty.

In 1996, the Missouri Legislature enacted section 165.016. Subsections one and two set forth funding formulas requiring Missouri public school districts to spend a certain percentage of operating costs for tuition, teacher retirement and compensation for certificated staff. § 165.016.1; § 165.016.2.[3] The required percentage is based on a comparison between the amount spent on tuition, teacher retirement and certificated staff compensation for the current school year compared with the amount spent during the "base school year." § 165.016.1. The base year percentage is the average spent on tuition, teacher retirement and compensation for the 1991–92 and 1992–93 school years. Id.

For the 1996–97 school year, a district was required to spend on tuition, teacher retirement and certificated staff compensation a percentage of current operating costs that was not less than two percentage points less than the base school year certificated salary percentage. § 165.016.1. The Knob Noster District's base year percentage was 76.54 %. In 1996–97, the District spent only 71.99 % of its operating costs on tuition, retirement and salaries, which was more than two percentage points less than the base year percentage. As a result, the Department of Secondary and Elementary Education

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. The original petition, filed on December 22, 1999, named the Association and two teachers as plaintiffs. The District filed a motion to dismiss the Association's petition on January 27, 2000. The Association added the names of eighteen teachers to its amended petition. The trial court denied the motion to dismiss on March 24, 2000.

3. Subsection two provided school districts with an alternative method for complying with the statute beginning with the 1997–98 school year. School districts could show compliance under this subsection by having "an unrestricted fund balance in the combined incidental and teachers' funds on June thirtieth which is equal to or less than ten percent of the combined expenditures for the year from those funds." § 165.016.2(2). School districts were only permitted to use this method to show compliance, however, during years when the district did not owe a penalty under section 165.016.6. Id.

("DESE") sent the District a notice of noncompliance for the 1996–97 school year on March 25, 1998.

When a district violates the statute, it is generally required to pay a penalty to building-level administrative staff and non-administrative certificated staff during the year following the notice of the violation. § 165.016.6. However, a district may seek to avoid or reduce its penalty by asking the state board of education for a one-time revision to its base-year percentage. § 165.016.4. Pursuant to the statute, the District asked the state board to reduce its base-year percentage to 74.15 by using figures from the 1989–90 and 1990–91 school years. The Association objected to the change. On April 15, 1999, the state board agreed to revise the District's base year percentage to the compromise amount of 75.34.

In a further effort to bring itself into compliance, the District made two separate requests for adjustments to its certificated salary percentage for 1996–97. The District asked DESE to include Medicare expenditures, which would increase its percentage to 72.59. The District also made a request to exclude grants, which would further increase its percentage for 1996–97 to 72.86. DESE granted both requests.

Notwithstanding the revisions granted by DESE and the state board, the parties agreed that the District was still out of compliance for the 1996–97 school year. The Association claimed the correct penalty was $66,710.82, arguing that while the statute probably allowed for the inclusion of Medicare, it did not permit the District to exclude grants. The District claimed that it could exclude grants and that the penalty was therefore $41,889.

While the District conceded that it was not in compliance with the statute for the 1996–97 school year, it claimed in its cross-motion for summary judgment that it had been advised by DESE that it did not owe a penalty because of an amendment to the statute that was passed in 1998. The amendment, which is codified in subsection three, provides an alternative method by which a school district can demonstrate compliance with the statute. Subsection three created a new formula, the "fiscal instructional ratio of efficiency" or FIRE. 165.016.3.[4] The amendment allows a district to show compliance with the statute by maintaining or increasing its FIRE as compared to its FIRE for the 1997–98 base year. § 165.016.3(2). If a district complies with the FIRE provision, it need not abide by the certificated staff formula. § 165.016.3(2).

As noted previously, section 165.016.6, the penalty provision of the statute, requires that a school district must pay an additional amount in the year following the notice of violation. It provides that a school district "shall compensate the building-level administrative staff and nonadministrative certificated staff ... an additional amount which is equal to one hundred ten percent of the amount necessary to bring the district into compliance...." § 165.016.6. The statute fur-

---

4.  Section 165.016.3(1) provides:

As used in this subsection, "fiscal instructional ratio of efficiency" or "FIRE" means the quotient of the sum of the district's current operating costs as defined in section 163.011, RSMo, for all kindergarten through grade twelve direct instructional and direct pupil support service functions plus the costs of improvement of instruction and the cost of purchased services and supplies for operation of the facilities housing those programs, and excluding student activities, divided by the sum of the district's current operating cost for kindergarten through grade twelve, plus all tuition revenue received from other districts minus all noncapital transportation and school safety and security costs;

ther declares that "[i]n any year in which a penalty is paid, the district shall pay the penalty specified in this subsection in addition to the amount required under this section for the current school year." *Id.*

The District claimed that, pursuant to the amended statute, it increased its FIRE for the 1998–99 school year—the year in which the penalty was due—by $101,558. Accordingly, the District argued that it satisfied the penalty by increasing its FIRE formula for the year in which the penalty was due by more than the penalty amount and that it was entitled to have its motion for summary judgment granted. Counsel for the Association acknowledged that the District had given teachers a salary increase for the 1998–99 school year that exceeded $67,000.

On December 20, 2001, the trial court entered its judgment, which contained the following findings and conclusions:

1. Defendant Knob Noster School District violated the requirements of § 165.016.1, RSMo., for the 1996–97 school year by failing to expend the required percent of its operating costs for tuition, teacher retirement and compensation of certified staff.

2. The Base Year Revision granted to Defendant on April 15, 1999, applied retroactively so as to forgive a portion of the penalty for non-compliance during 1996–97. . . .

3. The Missouri Department of Elementary and Secondary Education ("DESE") did not have the authority to exclude grants from its calculation of the Knob Noster School District's salary compliance figures for 1996–97. However, DESE did have the authority to include Medicare contributions within the definition of compensation for certificated staff, for purposes of calculating the District's salary compliance figures for 1996–97.

4. Based on the foregoing findings and the Base Year Revision granted by the State Board of Education, Defendant Knob Noster School District was obligated to pay a penalty of $66,710.82 to its certificated staff during 1998–99, because it failed to comply with § 165.016, RSMo., during 1996–97.

5. Defendant Knob Noster School District paid the $66,710.82 penalty it was required to pay in 1998–99, by giving its certificated staff a salary increase which it was not required to provide, and which exceeded the penalty amount. Therefore, the District paid the penalty amount "in addition to the amount required under this section [§ 165.016, RSMo.] for the current school year." § 165.016.6 RSMo.

On January 18, 2002, the Association filed a motion to amend order and judgment, or, in the alternative, motion for new trial. On February 19, 2002, the Association filed its reply, claiming that its motion was based on the same legal theory presented at trial. On February 19, 2001, following a hearing, the trial court denied the Association's motion. This appeal follows.

"This court will affirm the decision of the circuit court in declaratory judgment action unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Russell v. Mo. State Employees' Ret. Sys.,* 4 S.W.3d 554, 556 (Mo.App. W.D.1999). However, the interpretation of a statute is a question of law and, therefore, our review is *de novo. Pavlica v. Director of Revenue,* 71 S.W.3d 186, 189 (Mo.App. W.D.2002); *In re Interest of T.A.S.,* 62 S.W.3d 650, 658 (Mo.App. W.D.2001).

■ In its first point, the Association claims the trial court erred in determining that the District paid the penalty because it incorrectly applied section 165.016.6, the penalty provision of the statute, which provides:

Any school district which is determined by the department to be in violation of the requirements of subsection 1 or 2 of this section, or both, shall compensate the building-level administrative staff and nonadministrative certificated staff during the year following the notice of violation by an additional amount which is equal to one hundred ten percent of the amount necessary to bring the district into compliance with this section for the year of violation. In any year in which a penalty is paid, *the district shall pay the penalty specified in this subsection in addition to the amount required under this section for the current school year.*

(Emphasis added).

The Association argues that the penalty provision must be interpreted in light of the statute as it was originally written, without the FIRE formula amendment. Its argument is that the statute is ambiguous and that interpreting section 165.016.6 in light of the FIRE formula would yield an absurd result.

■ "The first rule of statutory construction is to determine and give effect to the legislative intent." *State v. Massey,* 60 S.W.3d 625, 628 (Mo.App. W.D.2001). "We do this by first consulting the language of the statute, giving its terms their plain and ordinary meaning." *Sisco v. Bd. of Trs. of Police Ret. Sys. of St. Louis,* 31 S.W.3d 114, 118 (Mo.App. E.D.2000). "Where the language of the statute is clear, a court must give effect to the language as written." *Mo. Nat'l. Educ. Ass'n v. Mo. State Bd. of Educ.,* 34 S.W.3d 266, 279 (Mo.App. W.D.2000). "We will, how-ever, resort to rules of construction where the terms of the statute: (1) are ambiguous; or (2) are unambiguous, but, when given their ordinary meaning, produce an illogical or absurd result in light of the statute's purpose." *Sisco,* 31 S.W.3d at 119. "We construe the provisions of a legislative act together and if reasonably possible, all provisions must be harmonized." *In re the Interest of J.B.,* 58 S.W.3d 575, 578 (Mo.App. E.D.2001).

■ When the legislature amends a statute, the amendment is presumed to have some effect. *State v. Cross,* 34 S.W.3d 175, 181 (Mo.App. W.D.2000). " 'In deciding the effect of the amendment, the Court looks to the words used in the statute and the plain and ordinary meaning of those words.' " *Baldwin v. Dir. of Revenue,* 38 S.W.3d 401, 405 (Mo. banc 2001) (quoting *Hagan v. Dir. of Revenue,* 968 S.W.2d 704, 706 (Mo. banc 1998)). " 'The provisions of the entire legislative act must be considered together and all the provision[s] must be harmonized if possible.' " *Id.*

Our first task, then, is to consider the language of the statute by giving the words their plain and ordinary meaning, while at the same time attempting to harmonize all provisions of the statute. Contrary to the Association's argument, in interpreting section 165.016.6, the penalty provision, we must consider the effect, if any, of the Legislature's amendment contained in section 165.016.3. We will not look beyond the language of the statute and resort to rules of construction unless the language used by the legislature is ambiguous or would produce an absurd result.

The statute is not ambiguous. It provides that "[i]n any year in which a penalty is paid, the district shall pay the penalty ... in addition to the amount required

under this section for the current school year." *§ 165.016.6.* The District's penalty was due in the 1998–99 school year. Section 165.016.3(2) sets forth the amount required under the statute for the 1998–99 school year as follows: "A school district shall show compliance with this section in school year 1998–99 and thereafter by the method described in subsection 1 and 2 of this section, or by maintaining or increasing its fiscal instructional ratio of efficiency compared to its FIRE for the 1997–98 base year." Thus, the statute clearly provides that the District could satisfy the penalty by paying the penalty amount in addition to the amount it was required to pay for the 1998–99 school year. The District did so; it showed its compliance with the statute by increasing its FIRE, and the trial court determined that the increase included a salary increase that was more than the penalty amount of $66,710.82.

The Association nonetheless contends that this reading of the statutory provisions produces an absurd result. It claims that unlike the formula in the first two subsections of section 165.016, the FIRE formula does not require a school district to earmark a specific amount for salaries. Rather, the FIRE formula only requires a district to show a ratio of instructional costs to adjusted current operating costs. The Association asserts that a school district may comply with this formula even if it reduces salaries, simply by increasing another area of the budget, such as school supplies. Such a result is absurd, according to the Association, because it would result in an implied repeal of subsection one of the statute. Consequently, the Association reasons that the only way to give

effect to the intent of the legislature is to read section 165.016.6, the penalty provision, without reference to the FIRE amendment.

The Association's contention is devoid of merit. It is elementary that "[a]ll provisions of a statute should be read together and harmonized." *Eureka Fire Protection Dist. of St. Louis County v. Hoene*, 623 S.W.2d 79, 83 (Mo.App. E.D.1981). Obviously, this includes amendments. *Baldwin*, 38 S.W.3d at 405. The Association concedes that the school district need not comply with section 165.016.1 if it complies with the provisions of section 165.016.3. If the District need not comply with section 165.016.1, there is simply no rational basis for saying that the District must pay its penalty in addition to the amount that would be required under that subsection. Moreover, there is no requirement in the statute that the District label its salary increase a "penalty" in order to be deemed to have satisfied the penalty provisions of the statute. The District owed a penalty for the 1996–97 school year that was due during the 1998–99 school year. The District was required to pay the penalty amount in addition to the amount required under the statute for the 1998–99 school year. The District did this by increasing its FIRE formula for the 1998–99 school year, and, in doing so, gave teachers a salary increase that exceeded the $66,710.82 penalty amount.[5] Accordingly, the District satisfied its penalty. Point denied.

■ In its second point, the Association claims the statute is ambiguous as to when school districts may begin using the FIRE

---

5. We note that the trial court, in determining that the District had satisfied its penalty, specifically found that the District gave a salary increase that was more than the penalty amount and did not simply increase its FIRE

by putting more money into a different area of the budget, such as school supplies. The statute requires that the penalty be paid to specified staff members. § 165.016.6.

formula to demonstrate compliance with the statute. The Association then argues that the ambiguity should be resolved in its favor, and that we should hold that school districts could not use the FIRE formula to demonstrate compliance with the statute until the 1999–2000 school year. Thus, the Association contends that the District owed the penalty on top of what it was required to pay under section 165.016.1, rather than section 165.016.3.

Section 165.016.3, in its entirety, provides:

3. *Beginning with the 1999–2000 school year:*

(1) As used in this subsection, "fiscal instructional ratio of efficiency" or "FIRE" means the quotient of the sum of the district's current operating costs, as defined in section 163.011, RSMo, for all kindergarten through grade twelve direct instructional and direct pupil support service functions plus the costs of improvement of instruction and the cost of purchased services and supplies for operation of the facilities housing those programs, and excluding student activities, divided by the sum of the district's current operating cost for kindergarten through grade twelve, plus all tuition revenue received from other districts minus all noncapital transportation and school safety and security costs;

(2) A school district *shall show compliance with this section in school year 1998–99 and thereafter* by the method described in subsections 1 and 2 of this section, or by maintaining or increasing its fiscal instructional ratio of efficiency compared to its FIRE for the 1997–98 base year.

(Emphasis added).

The Association argues that the use of a colon following the introductory phrase of section 165.016.3 indicates that the 1999–2000 date applies to the entire subsection, regardless of the date that is included in section 165.016.3(2). It claims that the FIRE provision did not go into effect until the 1999–2000 school year, and that the District cannot use the provision to avoid its obligation to comply with the provisions of section 165.016.1 for the 1998–99 school year.

■ If we were to give effect to the Association's reading of the statute, it would render meaningless the language stating that school districts may show compliance with the statute by using the FIRE method "in school year 1998–99 and thereafter. . . ." Such a result would be contrary to the well-established rule of statutory interpretation: "We should not interpret statutes in a way which will render some of their phrases to be mere surplusage." *State ex rel. Mo. Local Gov't. Ret. Sys. v. Bill*, 935 S.W.2d 659, 666 (Mo.App. W.D. 1996). " 'We must presume that every word of a statute was included for a purpose and has meaning.' " *Bowen v. Mo. Dep't of Conservation*, 46 S.W.3d 1, 10 (Mo.App. W.D.2001) (quoting *Comm. on Legislative Research of Mo. Gen. Assembly v. Mitchell*, 886 S.W.2d 662, 664 (Mo. App. W.D.1994)).

Contrary to the Association's contention, it is possible to reconcile these two seemingly conflicting dates by considering the timeline created by section 165.016 for when school districts report financial data to DESE. School districts report their financial data to DESE on or about August 15 of each year, following the end of the school year. § 162.821; *Mo. Nat'l Educ. Ass'n*, 34 S.W.3d at 273. DESE notifies the district of its compliance or noncompliance with the requirements of 165.016 for the preceding school year on or about January 1. *Mo. Nat'l Educ. Ass'n*, 34 S.W.3d at 273. Therefore, while school districts were permitted to use the FIRE formula

to comply with the statute for the 1998–99 school year, DESE would not have used the FIRE formula to determine whether a school district complied with the statute until the 1999–2000 school year, notifying the District on or about January 1, 2000.[6] This construction of the statute is even more evident when we place the introductory phrase of section 165.016.3 immediately before that provision's second subsection, so it would read as follows:

Beginning with the 1999–2000 school year:

* * *

(2) A school district shall show compliance with this section in school year 1998–99 and thereafter by the method described in subsections 1 and 2 of this section, or by maintaining or increasing its fiscal instructional ratio of efficiency compared to its FIRE for the 1997–98 base year.

The introductory phrase refers to the year in which the district must *show* its compliance for the 1998–99 school year, recognizing that a district would not show its compliance for the 1998–99 school year until the 1999–2000 school year.

It is clear from reading subsection three in its entirety that the legislature intended the FIRE formula to apply to financial data prior to the 1999–2000 school year. Subsection 3(2) provides that a district demonstrates its compliance with FIRE "by maintaining or increasing its fiscal instructional ratio of efficiency compared to its FIRE for the *1997–98 base year*." (Emphasis added). Accordingly, the legislature clearly intended the FIRE formula to be applied to school districts' financial data beginning with the 1997–98 school

year. In addition, the legislature explicitly stated that a school district could show its compliance "in school year 1998–99 and thereafter" by maintaining or increasing its FIRE formula. If we were to adopt the Association's reading of the statute, it would render this language meaningless. We agree that subsection three could have been drafted with more clarity. However, a reading of the statute that gives effect to all of the words in the statute is possible. The statute provides that beginning with the 1999–2000 school year, the District was permitted to show that it had complied with the statute "in school year 1998–99" by maintaining or increasing its FIRE formula. Point denied.

■ In its third point, the Association argues that the evidence established that the District never intended to pay the penalty, and the trial court's determination that the District did in fact pay the penalty is against the weight of the evidence.

The Association asserts that the District never told its certificated staff that the salary increase was in satisfaction of the penalty. In addition, the Association notes that at an April meeting of the Knob Noster Board of Education, one of the board members moved to increase certificated staff expenditures by $66,710.66 for the 1998–99 school year but that the motion died for lack of a second. The Association contends that the District did not pay the penalty because it was advised by DESE that it had satisfied the penalty by increasing its FIRE by more than the penalty amount.

The District argues that the statute does not require the penalty to be designated as such. In addition, the District contends

**6.** DESE apparently does not always notify school districts of their compliance or non-compliance with section 165.016 by January 1 of the following year. The record shows that it did not notify the District of its noncompliance for the 1996–97 school year until March 25, 1998.

that there is no requirement that the District prove that it intended to pay the penalty when it gave teachers a raise that was more than the penalty amount.

The trial court's determination that the District paid the penalty to teachers is not against the weight of the evidence. There is no requirement in the statute that the District designate the penalty as such or form the intent to pay the penalty. The statute simply provides that "the district shall pay the penalty specified in this subsection in addition to the amount required under this section for the current school year." § 165.016.6. The trial court's finding that the District had paid its penalty to teachers was based on an admission from counsel for the Association that the teachers received a salary increase that was more than the penalty amount. Point denied.

The judgment of the trial court is affirmed.

All concur.