**Stephen Paul HARPER, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. WD 62533.**

Missouri Court of Appeals,
Western District.

Sept. 2, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2003.

Robert H. Martin, Independence, MO, for Appellant.

James R. Layton, Jefferson City, MO, for Respondent.

Before: PAUL M. SPINDEN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

This appeal stems from the administrative revocation and denial of Mr. Stephen Paul Harper's driving privileges. Because Mr. Harper has not been convicted more than twice of violating state law relating to driving while intoxicated, we reverse the denial of his driving privileges under section 302.060(9). In all other respects, we affirm the judgment of the circuit court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 1999, Mr. Harper drove his vehicle into the back of a second vehicle, in turn causing that vehicle to hit a third vehicle. Mr. Harper concedes that he was legally intoxicated at the time. Five people were injured in the accident.

The State charged Mr. Harper with five counts of second-degree assault. Mr. Harper pleaded guilty to all five counts on March 13, 2000. He was sentenced to concurrent three-year prison terms on each count.[1] Following his release from custody, Mr. Harper was placed on probation for five years.

In February 2001, the Director of Revenue notified Mr. Harper by letter that his driving privileges would be revoked on March 7, 2001, for one year because of "an accumulation of traffic convictions." Citing section 302.304,[2] the letter showed that Mr. Harper had accumulated sixty points on his driving record as a result of five felony convictions for "asault vehiclr injury" [sic].

In a companion letter, the Director further notified Mr. Harper that his driving privileges would be denied for ten years "for being convicted more than twice for offenses relating to driving while intoxicated, (refer to 302.060, RSMo.)." This letter listed three felony convictions for "asault vehiclr injury" [sic].

After receiving these letters, Mr. Harper petitioned the circuit court to review the Director's actions. In his amended petition for review, Mr. Harper complained that the Director's decision to revoke his driving privileges for one year under section 302.304 was tardy because it came almost one year after the circuit court convicted him and there was "no reasonable justification for the one-year delay" in the Director's revocation notice. Mr. Harper further complained about the Director's decision to deny his driving privi-

---

1. Although the complaint charged Mr. Harper with five counts of second-degree assault and Mr. Harper pleaded guilty to all five counts, the judgment only mentions four counts.

2. Unless otherwise indicated, all statutory references are to RSMo.2000.

leges for ten years under section 302.060. He maintained that he did not have more than two felony convictions, because his "only convictions arise out of a single transaction, occurrence or event occurring on April 28, 1999, and do not constitute multiple convictions . . . ."

The circuit court affirmed the Director's actions. The circuit court found that the Director did not receive notice of Mr. Harper's convictions from the circuit clerk until February 2001, and that immediately upon receiving such notice, the Director timely notified Mr. Harper that his driving privileges would be revoked for one year. The circuit court further found that "the conviction of five separate counts arising out of the single incident of April 28, 1999, constitute multiple convictions for purposes of license suspension, requiring [the Director] to deny [Mr. Harper's] driving privileges for ten years pursuant to R.S.Mo. Section 302.060(9)." [3]

Mr. Harper subsequently filed a Motion to Reconsider and Amend Order, or in the Alternative, for a New Trial, in which he claimed for the first time that section 302.060(9) also violates his constitutional rights under the equal protection clause. The circuit court denied this motion.

Mr. Harper filed his notice of appeal to the Missouri Supreme Court on August 29, 2002. By order dated March 4, 2003, the Missouri Supreme Court transferred the appeal to this court under Article V, section 11 of the Missouri Constitution.

### MR. HARPER'S POINTS ON APPEAL

Mr. Harper raises three points on appeal. In his first point, Mr. Harper argues that the circuit court erroneously determined that he has been convicted more than twice of offenses relating to driving while intoxicated under section 302.060(9). Mr. Harper argues that he has only been convicted once under section 302.060(9), because the judgment convicting him on all five counts of assault represents just one conviction arising out of one incident.

In his second point, Mr. Harper argues that the Director's interpretation of the word "conviction," as it appears in section 302.060, violates his constitutional right to equal protection of the law. Conceding that his claim is subject to rational-basis review, Mr. Harper argues that the Director's interpretation discriminates against people who happen to injure more than one person in a drunk driving accident and that there is no rational basis for this discrimination because it depends solely on the manner in which the prosecuting attorney chooses to draft a complaint. It does not account for the seriousness of the offense committed, the factual circumstances surrounding the offense, or whether the defendant is a habitual drunk driver.

In his final point, Mr. Harper argues that the Director took too long to revoke his license under section 302.304. Focusing on section 302.225(2), which requires the circuit court to notify the Director of a conviction within ten days, Mr. Harper points out that the Director did not notify him of the revocation until almost a year after his conviction. Despite authority to the contrary, Mr. Harper argues that the circuit court's duty to notify the Director of convictions should be mandatory and that the failure to provide timely notice here should preclude the Director from revoking his license for one year under section 302.304.

Mr. Harper further argues that this result accords with legislative intent, because

---

**3.** The circuit court originally denominated its ruling simply as an "Order." On October 3, 2002, the court amended its order to include the word "judgment" in the title.

the General Assembly intended that the notification provision ensure the swift removal of offenders from the road; since that purpose was not served here, Mr. Harper reasons that the only purpose of revoking his license was to punish him twice for the same crime.

## II. STANDARD OF REVIEW

 When a driver appeals the circuit court's judgment in a license revocation case, we review the circuit court's judgment, rather than the Director's decision. *Sumpter v. Dir. of Revenue*, 88 S.W.3d 491, 493 (Mo.App. W.D.2002). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.*

## III. ANALYSIS

### A. Mr. Harper Has Not Been Convicted More Than Twice Under Section 302.060(9)

 Mr. Harper's first point requires us to consider the meaning of the word "conviction" as defined in section 302.010(3) and as used in a variant form in section 302.060(9). To ascertain the meaning of the word in this context, we must determine the General Assembly's intent "by first consulting the language of the statute, giving its terms their plain and ordinary meaning." *Knob Noster Educ. v. Knob Noster R-VIII Sch. Dist.*, 101 S.W.3d 356, 361 (Mo.App. W.D.2003) (internal quotation marks and citations omitted). "The plain meaning of words, as found in the dictionary, will be used unless the legislature provides a different definition." *Lincoln Indus., Inc. v. Dir. of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001).

 While the words and phrases used in the statute are the first source in deter-mining legislative intent, a proper analysis also must consider the context in which the General Assembly used the words, the purposes that it intended to accomplish, and the evils that it intended to cure. *Appleby v. Dir. of Revenue*, 851 S.W.2d 540, 541 (Mo.App. W.D.1993).

 If the language of the statute is clear, we must give effect to the language as written. *Knob Noster Educ.*, 101 S.W.3d at 361. But we will resort to rules of statutory construction where the terms of the statute "(1) are ambiguous; or (2) are unambiguous, but, when given their ordinary meaning, produce an illogical or absurd result in light of the statute's purpose." *Id.* (internal quotation marks and citation omitted). "We construe the provisions of a legislative act together and if reasonably possible, all provisions must be harmonized." *Id.* (internal quotation marks and citation omitted).

With these principles in mind, we now consider the meaning of the statutory language before us. When a person "has been convicted more than twice of violating state law ... relating to driving while intoxicated" the Director of Revenue must immediately deny that person's driving privileges. § 302.060(9). While the General Assembly has not defined the verb "convicted" in the statute, it has defined the noun "conviction." In this context, the word "conviction" means:

> any final conviction; also a forfeiture of bail or collateral deposited to secure a defendant's appearance in court, which forfeiture has not been vacated, shall be equivalent to a conviction, except that when any conviction as a result of which points are assessed pursuant to section 302.302 is appealed, the term "conviction" means the original judgment of conviction for the purpose of determining the assessment of points, and the date of final judgment affirming the con-

viction shall be the date determining the beginning of any license suspension or revocation pursuant to section 302.304. § 302.010(3).

Although it is uncontested that the circuit court convicted Mr. Harper of five counts of second-degree assault and that these counts were related to driving while intoxicated, Mr. Harper contends that he actually has only one "conviction" under section 302.060(9), because all five counts arose out of one drunk driving incident and because the circuit court issued just one judgment pertaining to all five counts.

This court's Eastern District has twice rejected a substantially similar argument. In *Clare v. Director of Revenue*, 64 S.W.3d 877 (Mo.App. E.D.2002), a drunk driver drove his car into another car, injuring his passenger and three people inside the other car. *Id.* at 878. The State later charged him with four counts of second-degree assault in one action. *Id.* He pleaded guilty to all four counts. *Id.* at 880. Four separate documents titled "RECORD OF CONVICTION" showed that the driver was sentenced to seven years, execution suspended, five years probation, and ninety days "shock," for each count. *Id.* Like Mr. Harper, the drunk driver in *Clare* argued that he was convicted only once because all four assault counts arose out of the same collision. *Id.*

Concluding that the statutory definition found in section 302.010(3) did not "resolve the issue of whether a person who pleaded guilty to more than two counts of violations of state law relating to driving while intoxicated that resulted from one incident

is subject to the provisions of section 302.060(9)" the Eastern District turned to dictionary definitions for guidance. *Id.* at 879. After reviewing those definitions,[4] the court held that "Clare was convicted more than twice of violations of state law relating to driving while intoxicated." *Id.* at 880.

In doing so, the court rejected the driver's reliance upon section 558.016, which defines a persistent offender for sentencing purposes as " 'one who has pleaded guilty to or has been found guilty of two or more felonies *committed at different times.*' " *Id.* (quoting section 558.016.3). Distinguishing section 558.016.3 from section 302.060(9), the court concluded that the absence of the phrase "committed at different times" in section 302.060(9) showed "the legislature's awareness of the difference between convictions [arising from one transaction] and convictions committed at different times." *Id.*[5] The court said:

> If the legislature intended section 302.060(9) to only apply to violations committed at different times, as provided in section 558.016, then it could have included such language in section 302.060(9). The legislature chose not to do so.

*Id.*

In *Timko v. Director of Revenue*, 86 S.W.3d 132 (Mo.App. E.D.2002), the Eastern District again concluded that the Director properly denied a drunk driver's privileges under section 302.060 after the driver pleaded guilty to four felony counts

4. According to *Clare*, "[c]onviction is defined as '[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty.' " 64 S.W.3d at 879–80 (quoting Black's Law Dictionary 335 (7th ed.1999)). "The verb convict is defined as '[t]o find (a person) guilty of a criminal offense either upon a criminal trial, a plea of

guilty, or a plea of nolo contendere (no contest).' " *Id.* at 880 (quoting Black's Law Dictionary 335).

5. It is worth noting that section 558.016 does not actually refer to "convictions" but to guilty pleas or findings of guilt.

stemming from one drunk driving incident. *Id.* at 132–34.

Initially, we agree with the Eastern District that the statutory definition of "conviction" in section 302.010(3) does not answer the question before us. By defining a conviction as "any final conviction," section 302.010(3) simply invites another question: what is a final conviction for purposes of chapter 302? The definition does not say.

The remainder of the definition is equally unhelpful in answering the question before us. The portion of the definition that refers to forfeiture of bail or collateral does not apply here. The portion of the definition that equates a conviction to "the original judgment of conviction" likewise does not apply here because it expressly relates to the assessment of points under section 302.302 and to the suspension or revocation of licenses under section 302.304, not to the denial of driving privileges under section 302.060(9). Because Mr. Harper's first point pertains to the interpretation of section 302.060(9), the portion of section 302.010(3) that defines the word "conviction" with reference to sections 302.302 and 302.304 does not apply.

We further agree with the Eastern District that we should consult dictionary definitions in the absence of a statutory definition that resolves the issue. At the same time, however, we recognize that a word may have more than one meaning depending upon the context in which it is used. This is true of the word "conviction." *See Meyer v. Mo. Real Estate Comm'n,* 238 Mo.App. 476, 183 S.W.2d 342, 343 (1944) (recognizing that " '[t]he word "conviction" has more than one connotation' " and that its " 'implications in a given case are to be determined from the connection in which it is used.' ") (quoting *State ex rel. Scott v. Cox,* 243 S.W. 144, 146 (Mo.1922)). *See*

*also Yale v. City of Independence,* 846 S.W.2d 193, 194 (Mo. banc 1993) (citing *Meyer* and recognizing that the word "conviction" is subject to more than one meaning depending upon the context in which it is used).

Thus, some relevant dictionary definitions speak of a "conviction" as "the act of proving, finding, or adjudging a person guilty of an offense or crime...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 499 (3d ed.1993). *See also* BLACK'S LAW DICTIONARY 335 (7th ed.1999) (defining "conviction" as "[t]he act or process of judicially finding someone guilty of a crime" and as "[t]he judgment (as by a jury verdict) that a person is guilty of a crime.").

Likewise, some relevant dictionary definitions say that the verb "convict" means "to find or declare guilty of an offense or crime by the verdict or decision of a court or other authority...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra,* at 499. *See also* BLACK'S LAW DICTIONARY, *supra,* at 335 (verb "convict" means "[t]o find (a person) guilty of a criminal offense either upon a criminal trial, a plea of guilty, or a plea of nolo contendere (no contest).")

Were these the only relevant definitions, we might have little difficulty concluding that Mr. Harper has been convicted more than twice under section 302.060(9). These are not the only relevant definitions. The word "conviction" also can mean the following:

In a general sense, the result of a criminal trial, which ends in a judgment or sentence that the accused is guilty as charged. The final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere, but does not include a final judgment which has been expunged by pardon, reversed, set aside, or otherwise rendered nugatory.

The final consummation of the prosecution including the judgment or sentence, or as is frequently the case, the judgment or sentence itself.

BLACK'S LAW DICTIONARY 333–34 (6th ed.1990).

Under this definition, Mr. Harper could have one conviction because the prosecution resulted in one judgment of conviction.[6]

It is this meaning that we believe the General Assembly intended here, given the problem that the General Assembly sought to address in section 302.060(9): "the threat to life and property posed by those who repeatedly drink and then drive." *Eaton v. Dir. of Revenue*, 929 S.W.2d 282, 284 (Mo.App. S.D.1996). *See also Appleby*, 851 S.W.2d at 541 (purpose of section 302.060(9) is to protect the public from people who repeatedly drink and drive); *White v. King*, 700 S.W.2d 152, 155 (Mo. App. W.D.1985) ("The purpose of an enactment such as § 302.060 to deny or delimit driver licensure to persons underage, addicts, drunkards, and *recurrent intoxicated violators,* is not to punish a licensee, but to protect the public.") (emphasis added).[7] Hence, we decline to follow the *Clare* and *Timko* opinions from the Eastern District.[8]

If the purpose of the statute is to protect the public from repeat offenders, then the Director's interpretation of section 302.060(9) exceeds that purpose because it removes not only repeat offenders from the roads, but one-time offenders as well.

Accepting the Director's interpretation also creates the potential for absurd results inconsistent with the legislative purpose. Under the Director's interpretation, a one-time offender could have his driving privileges denied because of one incident in which he is charged with multiple violations of state law relating to driving while intoxicated, while a repeat offender could continue to drive even after multiple incidents, provided that he only committed one offense each time or that the prosecuting attorney only charged him with one offense each time.

We, therefore, agree with Mr. Harper that he has not been "convicted" more than twice within the meaning of section 302.060(9).[9] Accordingly, the Director should not have denied his driving privileges under that section. Point I is granted.

## B. Mr. Harper Has Waived His Equal Protection Claim

Given our analysis of Mr. Harper's first point, we need not consider whether the Director's interpretation of section 302.060(9) violates Mr. Harper's right to the equal protection of the laws. In any event, we agree with the Director that Mr. Harper has waived his equal protection claim by failing to assert it at the

---

**6.** Unlike the circuit court that convicted Mr. Harper in this case, the circuit court in *Clare* apparently prepared four separate documents titled "Record of Conviction." *Cf.* 64 S.W.3d at 880.

**7.** Also, by employing the phrase "To any person who has been convicted more than twice," rather than a phrase such as "To any person who has more than two convictions," section 302.060(9) further suggests that the General Assembly intended to focus on the number of occasions, rather than the number of offenses. The word twice means "for a

first and second time: on two occasions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2472 (3d ed.1993).

**8.** This opinion has been reviewed and approved by the court en banc.

**9.** This construction of the word "conviction" is limited to cases involving section 302.060(9), in light of the statutory purpose behind that section. It should not be construed to apply in other contexts.

earliest opportunity. "Constitutional issues are waived unless raised at the earliest possible opportunity consistent with orderly procedure." *Hollis v. Blevins*, 926 S.W.2d 683, 683 (Mo. banc 1996). A party may not raise such issues as an afterthought in a post-trial motion or on appeal. *Id.* at 684.

Mr. Harper first raised his equal protection claim in his post-trial Motion to Reconsider and Amend Order, or in the Alternative for a New Trial. By failing to raise the claim earlier, he has waived it. *See, e.g., Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 908 (Mo. banc 1992) ("The Adamses failed to preserve these constitutional challenges for appellate review. They were not raised at the earliest opportunity, but only after the trial court entered its judgment in post-trial motions."); *Lopez v. Three Rivers Elec. Co-op, Inc.*, 53 S.W.3d 117, 119–20 (Mo. App. E.D.1999) ("Here, Defendant raised this claim for the first time in its Motion for Judgment Notwithstanding the Verdict, and thus the issue is not preserved for appellate review.").

Mr. Harper does not claim that his equal protection challenge was somehow incapable of being raised any earlier. *Cf. Appeal of Mac Sales Co.*, 256 S.W.2d 783, 784 (Mo.1953) ("Just when such earliest opportunity arises in a given case depends upon the facts and circumstances. Almost always, it is too late to raise the question in a motion for new trial; however, it has been held that where no opportunity arises until the time for a motion for new trial, the constitutional question may be raised therein. These instances are rare."). And given that the Director already had interpreted the word "conviction" under section 302.060(9) when Mr. Harper filed his petition for review in the circuit court, he would have a hard time explaining why the constitutional claim was incapable of being raised in that petition.

## C. Tardy Notification of Conviction Under Section 302.225.

 "When a driver is convicted of a point assessable offense, points automatically accumulate against the driver's license." *Sumpter*, 88 S.W.3d at 494; section 302.304.2. While accumulation is automatic, however, a person cannot lose his driver's license until the Director receives notice of his convictions and then assesses points against his license. *Sumpter*, 88 S.W.3d at 494. The circuit court is supposed to notify the Director of any conviction requiring the suspension or revocation of driving privileges within ten days after conviction. Section 302.225.2. As our courts have said, the Director "is not omniscient and must be notified in order to carry out the duty of assessing points and determining the imposition of a revocation or suspension." *Jennings v. Dir. of Revenue*, 986 S.W.2d 513, 514 (Mo. App. E.D.1999).

The Director is also supposed to "notify by ordinary mail any operator of the point value charged against the operator's record when the record shows four or more points have been accumulated in a twelve-month period." Section 302.304.1. However, the statute does not impose a time limit upon this notification.

In this case, Mr. Harper was convicted on March 13, 2000. In the judgment upholding the Director's actions in this case, the circuit court found that the Director did not receive notice of Mr. Harper's convictions until February 2001 and that "immediately upon receiving notice of [his] convictions" the Director notified Mr. Harper that his driving privileges would be revoked for one year. If those findings are correct, then almost one year elapsed between the time of conviction and the

time that the Director notified Mr. Harper that the department was revoking his license for a year under section 302.304.

Even so, this court has upheld tardier notifications. In *Sumpter,* more than a year-and-a-half passed between conviction and notification. 88 S.W.3d at 495. Yet the court refused to impose a timeliness requirement on the Director. The court said:

> In the case at bar, the Director could not revoke Sumpter's driving privileges until she was notified of his convictions. The trial court misapplied the law when it ruled that the Director's revocation could not be sustained because of an unreasonable delay in notification of Sumpter.... Sumpter's driving privileges were still subject to revocation when the Director received notice of his convictions, despite the fact that more than a year-and-a-half had passed since the convictions.

*Id. See also Kersting v. Dir. of Revenue,* 792 S.W.2d 651, 653 (Mo.App. E.D.1990) (although section 302.225.2 says that the circuit court "shall" notify the Director of convictions within ten days, the statute is directory, rather than mandatory, and circuit court erroneously applied the law in reversing the Director's revocation of driving privileges on the basis that the circuit court failed to comply with the ten-day notice provision); *Jennings,* 986 S.W.2d at 514 (even though Director did not receive notice of February 1996 conviction until January 1998, driver's license was still subject to revocation because the Director cannot revoke license until notified of conviction(s)).[10]

Accordingly, Mr. Harper's third point is denied.

### IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part.

PAUL M. SPINDEN, P.J., and RONALD R. HOLLIGER, JJ. concur.

---

10. Although the Missouri Supreme Court has not addressed the issue directly, the court has recognized that the Director cannot act until notified of the need to do so. *See Buttrick v. Dir. of Revenue,* 804 S.W.2d 19, 20 (Mo. banc 1991) ("The legislature recognized that the Director is not omniscient and must be notified in order to carry out the duty of assessing points under the statutory scheme."), superseded by statute on other grounds as stated in *Jennings,* 986 S.W.2d at 514.