**GLADSTONE SPECIAL ROAD DISTRICT NO. 3 OF CLAY COUNTY, et al., Respondents,**

v.

**COUNTY OF CLAY, Missouri, Appellant.**

**No. WD 67977.**

Missouri Court of Appeals, Western District.

Jan. 22, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

Application for Transfer Denied April 15, 2008.

Michelle Stewart, Daniel C. Estes, Kevin A. Graham, Overland Park, KS, for appellant.

David A. Ramsay, Gladstone, MO, for respondent Gladstone Special Road District No. 3.

George E. Kapke, Independence, MO, for respondent Liberty Special Road District No. 5.

James A. Kessinger, Kansas City, MO, for respondent North Kansas City Special Road District No. 9.

John W. McClelland, Christine L. Schlomann, Kansas City, MO, for respondent Excelsior Springs Special Road District No. 10.

Mary M. Hinchey Parrish, Liberty, MO, for respondent Claycomo Special Road District No. 4 and respondent Pleasant Valley Special Road District No. 8.

Stephen D. Walsh, Kansas, City, MO, for respondent City of Kansas City, Missouri.

R. Brian Hall, Kansas, City, MO, for respondent City of Kearney, Missouri and respondent City of Lawson, Missouri.

Before VICTOR C. HOWARD, Chief Judge, PATRICIA BRECKENRIDGE, Judge [1] and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Clay County, Missouri ("Clay County") appeals a summary judgment in favor of nine special road districts and cities concerning the appropriate level of funding for road and bridge purposes under § 67.548.[2] For the following reasons, we affirm.

Appellant Clay County is a First Class County. The respondents are the following special road districts and cities. The special road districts are each organized

---

1. Breckenridge, J., was a member of this Court at the time this case was submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this Court as a special judge for the purpose of disposition of this case.

2. All statutory citations are to RSMo 2000 unless otherwise noted.

pursuant to Chapter 233, RSMo: Gladstone Special Road District No.3 of Clay County, Claycomo Special Road District No. 4 of Clay County, Liberty Special Road District No. 5 of Clay County, Pleasant Valley Special Road District No. 8 of Clay County, North Kansas City Special Road District No. 9 of Clay County, and Excelsior Springs Special Road District No. 10 of Clay County. The City of Kansas City is a Missouri Constitutional charter municipality lying partly within the territory of Clay County. The City of Kearney and the City of Smithville are Fourth Class Cities organized pursuant to Chapter 79, RSMo and located wholly within Clay County.

Section 67.548 was enacted in 1988 and provides as follows:

**67.548. County commission of certain counties approving sales tax may eliminate or reduce certain levies, replacement procedure, powers—duties (Clay and Platte counties)—**

1. In any first or second class county not having a charter form of government, which contains all or any part of a city with a population of greater than four hundred thousand inhabitants, in which the voters have approved a sales tax as provided by section 67.547, the county commission may:

(1) Reduce or eliminate the county general fund levy, the special road and bridge levy, or the park levy; and

(2) Grant county sales tax revenues to cities, towns and villages and to special road districts organized pursuant to chapter 233, RSMo.

2. If the county commission reduces a special road and bridge tax levy pursuant to this section which results in a reduction of revenue available to a city, town or village or to a special road district organized pursuant to chapter 233, RSMo, the commission shall in that year in which the reduction of revenue occurs set aside and place to the credit of each such entity sales tax revenues in an amount at least equal to that which each such entity would have otherwise been entitled from the special road and bridge tax levy, had it not been for such reduction. In subsequent years, each such entity shall receive from the county an amount of sales tax revenue equal to the amount of special road and bridge tax revenue that each such entity would have received in that year, but for the reduction in the special road and bridge tax. The county shall transfer such sales tax revenue to each such entity in twelve equal monthly installments during each year in which such entity is entitled to receive such sales tax revenue.

In 1987, the Clay County Commission ("the Commission") set the county's road and bridge tax levy at $0.24 per $100.00 valuation. After § 67.548 was enacted, the Commission reduced the levy to $0.00 for the year 1989 and for each year thereafter. From 1989 through tax year 2001, the Commission set aside and distributed to Respondents money from sales tax revenues which was equal to that which would have been received if the $0.24 per $100.00 valuation road and bridge tax levy had remained in place.

On November 6, 2001, a majority of the voters of Clay County approved a reduction of the maximum levy for road and bridge purposes to $0.00. The last sentence on that ballot stated, "Funding for Clay County roads and bridges is currently raised through sales tax revenues." Starting in calendar year 2003, Clay County ceased paying the full equivalent of $0.24 per $100.00 valuation from sales tax revenues to Respondents. After Respondents repeatedly demanded full payment of the prior contribution amount, Clay

County sent each of them a letter stating that, as a result of the November 2001 ballot, "there is some question as to Clay County's responsibility to continue funding special road districts." The letter further stated that the Commission "maintains the discretion to grant *sales tax revenues.*"

On August 30, 2004, Respondents filed a Petition for Declaratory Judgment and Accounting in the Circuit Court of Clay County, alleging that Clay County had failed to provide full funding for roads and bridges as mandated by § 67.548. Respondents argued that § 67.548 requires Clay County to distribute sales tax funds in an amount equal to the 1988 levy of $0.24 per $100.00 valuation of real property, which was the last levy greater than $0.00. The parties subsequently filed a joint stipulation of facts, as summarized above, and opposing motions for summary judgment seeking interpretation of § 67.548. The parties also stipulated to the dismissal without prejudice of the request for accounting. After considering counsels' briefs and oral arguments, the court found that there was no dispute of material fact and entered summary judgment with findings of fact and conclusions of law. The court found that § 67.548 was unambiguous and must be applied under its plain meaning. In relevant part, the court concluded that § 67.548.1 gives Clay County the discretion to use sales tax revenue as an alternative means "to supplement or fully fund its road and bridge obligations" to Respondents. It concluded that § 67.548.2 "mandates funding ... based upon the equivalent of the last annual road and bridge tax levy imposed in the year immediately prior to the reduction or elimination of such levy." The court further concluded that this level of funding must be provided in the year of reduction and "in all subsequent years so long as the County continues to utilize the sales tax alternative method of funding" as provided

for in § 67.548.1. The court stated that the " 'subsequent years' language in subsection 2 clarifies the intent of the General Assembly that the minimum-funding guarantee must continue in each of the years following the 'year of reduction.'" This appeal follows.

In its sole point on appeal, Clay County argues that the trial court erroneously interpreted § 67.548.2 because the court's interpretation renders the "subsequent years" language repetitive or meaningless.

"On appeal from summary judgment, '[o]ur review is essentially de novo.'" *Kyte v. American Family Mut. Ins. Co.,* 92 S.W.3d 295, 298 (Mo.App. W.D.2002) (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). This case was submitted on stipulated facts and involves the interpretation of a statute, which is purely a question of law and is also reviewed *de novo. Pratt v. Lasley,* 213 S.W.3d 159, 160 (Mo.App. W.D.2007). "Accordingly, we owe no deference to the trial court's determination of whether [Respondents were] entitled to summary judgment as a matter of law." *Kyte,* 92 S.W.3d at 298.

"The primary rule in statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Pratt,* 213 S.W.3d at 160 (internal quotation omitted). "Statutory construction should not be hyper technical but instead should be reasonable, logical, and should give meaning to the statutes." *United Pharmacal Co. of Mo., Inc. v. Missouri Bd. of Pharmacy,* 208 S.W.3d 907, 912 (Mo. banc 2006) (internal quotation omitted). "Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will

not resort to statutory construction." *Pet-et v. State, Dep't of Soc. Servs., Div. of Family Servs.,* 32 S.W.3d 818, 822 (Mo. App. W.D.2000) (internal quotation omitted). "We will, however, resort to rules of construction where the terms of the statute … are unambiguous, but, when given their ordinary meaning, produce an illogical or absurd result in light of the statute's purpose." *Knob Noster Educ. v. Knob Noster R–VIII Sch. Dist.,* 101 S.W.3d 356, 361 (Mo.App. W.D.2003) (internal quotation omitted). "We construe the provisions of a legislative act together and if reasonably possible, all provisions must be harmonized." *Id.* (internal quotation omitted).

■ As noted above, the trial court concluded that the phrase "subsequent years" in the second sentence of § 67.548.2 clarifies the legislature's intent that the minimum funding level set in the "year in which the reduction of revenue occurs" in the first sentence must continue after that first year. Clay County first contends that this interpretation renders the "subsequent years" sentence redundant and merely a continuation of the declaration of the first sentence. This is clearly incorrect because without the "subsequent years" sentence, there would be no direction as to the appropriate level of funding in the years after the year in which the reduction occurred.

■ Similarly, Clay County insists that if the legislature had intended only to clarify that the pre-reduction level of funding was to continue in subsequent years, it could have inserted a clause in the first sentence and that including a separate sentence was "unnecessarily verbose." This argument also fails because, "[a]lthough one might wish that the legislature had drafted its statutes with the absolute uniformity, clarity, and precision of an English grammar teacher, … [i]t is not our

place to require that the legislature draft its statutes with that degree of precision." *Lewis v. Gibbons,* 80 S.W.3d 461, 465 (Mo. banc 2002).

Clay County next argues that the trial court's conclusion directly contradicts the reasoning in *Kearney Special Road District v. County of Clay,* 863 S.W.2d 841 (Mo. banc 1993). In *Kearney,* the Court held that "[t]he plain language of § 67.548 requires a county commission to pay sales tax revenue only to [those entities] in existence before the commission reduced the special road and bridge tax levy." *Id.* at 843. The Court refused to interpret the statute to mean that "in each year that the commission sets the special road and bridge tax at 'zero,' each city, town, village, and special road district located within the county suffers a reduction." *Id.* The Court explained:

> In subsection 2 the legislature provides both for the "year in which the reduction of revenue occurs" and for "subsequent years." If an entity were able to sustain a reduction in revenue in each year that the commission sets the levy at "zero," rather than only in the year that the commission lowers the levy, the legislature would not have needed to provide for the payment of revenues in subsequent years. By the use of the phrases "year in which the reduction of revenue occurs" and "subsequent years" in subsection 2, the legislature makes clear that the "reduction" occurs only in the year that the county lowers the levy.

*Id.* The Court further found that, in contrast to § 67.548.1, the use of the word "shall" in subsection 2 "makes clear that action by the commission in subsection 2 is mandatory." *Id.*

Clay County asserts that *Kearney* held that the phrases "year in which the reduction of revenue occurs" and "subsequent years" must have a meaning "different and

apart" from each other. However, the Court clearly distinguished these two phrases only to show that the county commission's obligation to distribute sales tax revenue was first imposed in the year in which the commission first elected to use the alternative sales tax method to generate funds and reduced or eliminated the levy. The Court linked the funding for subsequent years to the funding for the year in which the reduction first occurred, which supports the trial court's conclusion in the case at bar.

Next, Clay County contends that the three sentences in § 67.548.2 set forth three separate rules for funding levels if a county commission opts to use sales tax revenue as an alternative method for generating revenue as allowed by § 67.548.1. This makes no sense because the three sentences clearly relate to each other. The second sentence, which contains the "subsequent years" language, essentially paraphrases the first sentence concerning the required level of funding.[3] The third sentence then clearly applies to both of the first two sentences, requiring the commission to "transfer such sales tax revenue to each such entity in twelve equal monthly installments during each year in which such entity is entitled to receive such sales tax revenue."

Finally, Clay County insists that the trial court's interpretation of § 67.548.2 precludes the Commission from ever decreasing *or* increasing the level of funding for road and bridge purposes beyond the level that existed before the year of reduction. It also argues that the court's interpretation ignores certain provisions of Chapter 137[4] giving the Commission the power to assess and levy property taxes for road and bridge purposes and to adjust the levy rates at its discretion. These arguments misinterpret the trial court's holding, which was that § 67.548.2 provides for a *"minimum*-funding guarantee" in the year the levy is reduced and in subsequent years if the Commission exercises its discretion to use the alternative sales tax method "to *supplement* or fully fund its road and bridge obligations." (Emphasis added.)

The plain language of § 67.548 expressly contemplates that a county commission may continue to generate additional revenue for road and bridge purposes through a levy, stating that the commission may "[r]educe or eliminate" the levy if the voters approve a sales tax. *§ 67.548.1(1).* Section 67.548.2 then mandates a minimum level of funding if the commission chooses to use the sales tax method, providing that funding must be "in an amount at least equal to" the amount that the entity would otherwise have been entitled to but for the reduction in the levy. Clay County's arguments that it has discretion to alter the amount of funding provided from the sales tax revenue are also without merit, as *Kearney* clearly states that the requirements of § 67.548.2 are mandatory, not discretionary. 863 S.W.2d at 843.

---

3.  Section 67.548.2 provides, in pertinent part: If the county commission reduces a special road and bridge tax levy ..., the commission shall in that year in which the reduction of revenue occurs set aside and place to the credit of each such entity sales tax revenues in an *amount at least equal to that which each such entity would have otherwise been entitled from the special road and bridge tax levy, had it not been for such reduction.* In subsequent years, each such entity shall receive from the county an amount of sales tax revenue *equal to the amount of special road and bridge tax revenue that each such entity would have received in that year, but for the reduction in the special road and bridge tax ....* (Emphasis added.)

4.  *See, e.g., §§ 137.555, 137.073, 137.565, 137.570, 137.575.*

Accordingly, the trial court did not err in holding that Clay County has an obligation under § 67.548 to distribute funds from sales tax revenues in an amount at least equal to the amount that each of the respondents would have been entitled to before the roads and bridges levy was reduced in 1989 for as long as the Commission elects to use the alternative sales tax method to generate revenue. Point denied.

The judgment of the trial court is affirmed.

All concur.